## J. H. PENIX, TRUSTEE, *v.* AMERICAN CENTRAL INS. CO.

[63 South. 346.]

1. INSURANCE. *Fire insurance. "Inventory." Iron-safe clause. Keeping set of books. Actually open for business.*

   A list of the goods, together with their values, which first went into the store of assured, and therefore a list of all then on hand, made by the assured himself, treated by him as an inventory, and preserved and introduced on the trial as such, complies with all of the requirements of and must be *held* to be an inventory, within the meaning of a fire insurance policy requiring of assured to take a complete itemized inventory of the stock on hand.

2. FIRE INSURANCE. *Iron-safe clase. "Keep a set of books."*

   The "Iron-safe clause" in a fire insurance policy providing that assured shall keep a set of books which shall clearly present a complete record of business transacted, including purchases, sales and shipments, is complied with where the assured keeps such a set of books as will enable an accountant to ascertain from them, together with the inventory, with reasonable accuracy, the value of the goods on hand at the time of the fire.

3. SAME.

   The requirement to "keep a set of books," etc., however, implies that the entries therein shall be at or near the time the transaction entered occurred. The requirement is that a record of the business be kept complete; not made complete for the time being at stated or irregular intervals by the recording of transactions long past.

4. SAME.

   Under the requirement to "keep a set of books" it is not necessary for assured to post his ledger each day, but he has the right to post only the gross amount of the cash sales for the interval between the dates of posting; but if he desires to pursue this plan, he must preserve the books containing the items which were posted to the ledger in gross.

5. FIRE INSURANCE. *Iron-safe clause. Actually open for business.*

   Where a store was closed and barred and the manager in charge was in another part of the city at the time it was burned, so

106 Miss. 10

that business could not be done in his absence, it was not ac-
tually open for business within the meaning of an iron-safe clause
in a fire insurance policy requiring the books to be kept in an
iron safe at all times when the building was not "actually open
for business."

6. FIRE INSURANCE. *Iron-safe clause. Compliance.*
   Where the books of account had always been placed at night, when
   the store was closed, not in a fireproof safe, but under the man-
   ager's pillow, who slept in the store, this was not a compliance
   with an iron-safe clause in a fire policy requiring the books to
   be kept in a place not exposed to a fire, which would destroy the
   building.

APPEAL from the circuit court of Hinds county.
HON. W. A. HENRY, Judge.

Suit by J. H. Penix against the American Central In-
surance Company. From a judgment for defendant
plaintiff appeals.

Appellant was plaintiff in the court below, and appel-
lee was defendant. Suit was brought to recover on an
insurance policy covering a stock of goods destroyed by
fire. The defense of the insurance company was that the
insured had failed to comply with the iron-safe clause
of the policy, which is as follows:

"Iron-Safe Clause.

"1st. The assured will take a complete itemized in-
ventory of stock on hand at least once in each calendar
year, and unless such inventory has been taken within
twelve calendar months prior to the date of this policy,
one shall be taken in detail within thirty days of the is-
suance of this policy, or this policy shall be null and void
from such date, and upon demand of the assured the
unearned premium from such date shall be returned.

"2nd. The assured will keep a set of books, which
shall clearly and plainly present a complete record of
business transacted, including all purchases, sales and
shipments, both for cash and credit, from date of inven-

tory as provided for in first section of this clause, and during the continuance of this policy.

"3rd.   The assured will keep such books and inventories—and also the last preceding inventory, if such has been taken—securely locked in a fireproof safe at night, and at all times when the building mentioned in this policy is not actually open for business; or, failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building.

"In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

*Watkins & Watkins,* for appellant.

It is contended that there was a violation of the iron-safe clause.   Our reply to this contention upon the part of the appellee was, and is repeated here:   First, that the appellant had thirty days within which to take an inventory of his stock of goods, and was not obligated to keep a set of books until the taking of this inventory. Cooley's Brief on Insurance, page 1820; *Gray and Franklin* v. *Insurance Co.,* 51 S. E. 922; *Insurance Co.* v. *Ison,* 65 S. E. 463; *Haanan* v. *Ins. Co.,* 118 N. W. 65; *Insurance Co.* v. *Wright,* 148 S. W. 824; *Parker & Co.* v. *Ins. Co.* (N. C.), 55 S. E. 717; *Papal Ins. Co.* v. *Wright* (Tex.), 148 S. W. 824; *Home Ins. Co.* v. *Bank,* 71 Miss.. 609; *Day* v. *Insurance Co.* (Ala.), 58 So. 549; *Ins. Co.* v. *Knight* (Ga.), 52 L. R. A. 70; *Insurance Co.* v. *Bank,* 71 Miss. 608; *Mercantile Co.* v. *Insurance Co.* (La.), 37 So. 967; 38 So. 87; *Insurance Co.* v. *Dorsey,* 58 So. 778; *Insurance Co.* v. *Masterson* (Tex.), 61 S. W. 962; *Roberts* v. *Insurance Co.,* 48 S. W. 559; *Insurance Co.* v. *Bank,* 71 Miss. 608.

If, however, everything that we have said in the preceding paragraphs to the effect that the invoice in ques-

tion does not constitute an inventory, and, therefore, that
Mr. Borah had thirty days in which to take an inventory
of the stock, is wrong, then, we respectfully submit that
there was a substantial compliance with the requirements
of the iron-safe clause; and it is to be noted in this con-
nection that only a substantial, and not a literal compli-
ance is required.   2 Cooley's Briefs on Insurance Co., p.
1818; *Insurance Co.* v. *Schwartz,* 57 L. R. A. 752; Mr.
Cooley, Brief on Torts, p. 1826; Ostrander, Fire Insur-
ance (2 Ed.), p. 657; *Jojes* v. *Southern Ins. Co.* from the
federal court of Arkansas, 38 Fed. 19; 1 Mayon, Insur-
ance (3 Ed.), pages 511, 512; *Majors* v. *Insurance Com-
pany,* 86 S. W. 883; *Insurance Co.* v. *Jones,* 15 S. W. 1034;
*Capitol F. Ins. Co.* v. *Kaufman,* 91 Ark. 310, 121 S. W.
289; *Phoenix Ins. Co.* v. *Schwartz* (Ga.), 57 L. R. A. 752;
*Assurance Co.* v. *Redding* in the circuit court of appeals,
68 Fed. 708; *Ins. Co.* v. *Woolveston* (Ark.), 102 S. W.
226.

If we should be in error, however, in our position that
the destruction of the little daybook, which was in the
building at the time of the fire, was not a violation of the
iron-safe clause; in other words, if this court should hold
that the terms of the policy required that the same should
be kept, then we respectfully submit to the court, even
without the daybook, all of the invoices, together with the
journal, present a substantial compliance with the iron-
safe clause; that the record would only be short five days
and that five days is such a short time in proportion to
the time the store was open that, certainly, it ought to
be left to the jury to say whether or not it was a substan-
tial compliance with the iron-safe clause; and we wish to
call the attention of the court to authorities in that con-
nection.   *Assurance Co.* v. *Redding,* above referred to,
68 Fed. 708; Cooley's Brief on Insurance, page 1822;
*Brown* v. *Insurance Co.,* supreme court of Texas, 35 S.
W. 1060; *Insurance Co.* v. *Andrews and Matthews,* su-
preme court of Texas, 89 S. W. 419; *Arnold* v. *Ins. Co.,*

67 S. E. 574; *Ins. Co.* v. *Alley,* 51 S. E. 812; *Ins. Co.* v. *Kearney,* 45 Lawyer's Edition, 460; *Insurance Co.* v. *Pearlstone,* supreme court of Texas, 45 S. W. 832; *Insurance Co.* v. *Sherman,* 43 S. W. ——, supreme court of Texas, 19 Cyc. 855.

That there was no violation of the iron-safe clause, because Mr. Borah was not required to keep any books at all until the expiration of the time within which he was permitted to take an inventory; that is to say, thirty days. If mistaken in this, then all of his invoices plus the day-book which was destroyed by fire, which was in use at the store, afforded a clear record of his business.

If we are mistaken in saying that there was no breach of the iron-safe clause in permitting this small day-book to get destroyed by fire, then, we say, without the day-book, a substantial compliance with the iron-safe clause was had. At least, it was a question for the jury to determine whether or not the clause was substantially complied with.

As to whether or not the assured propounded a false claim at all, and as to whether or not, if a false claim was propounded, it was done knowingly, under the undisputed evidence in this case, was peculiarly a question of fact for the jury.

*McLaurin, Armistead & Brien,* for appellee.

The brief of appellant in this case, which we have just received and read, is a complete somersault from the position occupied in the lower court. The entire direct examination of their witness, Borah, the merchant to whom this policy was issued, shows that the plaintiff's counsel in the lower court undertook to show a compliance with the iron-safe clause in that provision which obligates the assured to take an inventory. The provisions of the iron-safe clause in that respect are as follows: "First, the assured will take a complete itemized inventory of stock on hand at least once in each calendar year,

and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of the issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned; second, the assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory as provided for in first section of this clause, and during the continuance of this policy; third, the assured will keep such books and inventories—and also the last preceding inventory, if such has been taken—securely locked in a fireproof safe at night, and at all times when the building mentioned in this policy is not actually open for business; or, failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building.

"In event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

From the first paragraph of this clause the court will see that it is made the duty of the assured to "take an itemized inventory of stock on hand at least once in each calendar year and unless such inventory has been taken within twelve calendar months prior to the date of the policy, then one shall be taken in detail within thirty days of the issuance of this policy or this policy shall be null and void from such date, and upon demand of the assured, the unearned premium from such date shall be returned."

In the record is the itemized inventory of the goods taken out of the Silver City store and shipped to the Greenwood store, as sworn to by Borah and his clerk; when they arrived at the Greenwood store they were

checked out in the Greenwood store by this itemized inventory (so-called by counsel for appellant) by Borah himself and by Lyell, though it is marked an "Invoice of goods shipped to Greenwood."

. When counsel for appellant struck a snag in the books in this case showing that the iron-safe clause had been violated in reference to any correct record being kept by the assured, by which the company could discover from the books themselves, exactly what amounts had been put into the store, and what had been sold out of the store from the date of the inventory as provided for in the first section of the iron-safe clause, counsel for appellant, seeing that they had utterly failed to comply with the iron-safe clause in the policy, in that no correct set of books had been kept by the assured from June 8, 1911, the date of the inventory, as shown in this record, counsel for appellant then reversed their tactics, and undertook to claim that an invoice of goods, made at the time the goods were sold, especially where a man is selling to himself, did not constitute an inventory; and that Borah's itemized list of goods, taken out of the Silver City store, shipping the same goods to the Greenwood store; he and his clerk and manager, Lyell, checking the identical goods out of the boxes on arrival at Greenwood store; by the invoice or itemized list of goods made at the date of the shipment, of the goods from the Silver City store, to the Greenwood store, wherein Borah was selling to himself; from the parent store to the branch store, with no sale occurring between the time they were shipped from Silver City, and the time they were checked out by this same itemized list in the Greenwood store; with which goods they began business, that this itemized list of goods under this state of facts, did not constitute an inventory taken within a year prior to the date of the policy, as set out in the iron-safe clause, and that therefore Borah had thirty days after the date of the policy, to take a new inventory, and begin the keeping of a new set of

books, and in this way counsel seeks to escape the provisions of the iron-safe clause for his client, and permit Borah to be successful in a case presented by this record, which the lower court said, was reeking with fraud; that he would not permit a judgment to stand independent of any other defense in the case. Counsel for appellant rely on the case of *Insurance Co.* v. *Bank,* 71 Miss. 614, for the somersault that they now take when this case reaches the supreme court. This point has been settled against appellant's contention by this court in the very recent case of *Phoenix Ins. Co.* v. *Dorsey,* 58 So. 778, decided by the supreme court of Mississippi, June 17, 1912, in which that court said (on p. 780 in the right-hand column, discussing the case of *Ins. Co.* v. *Bank,* 71 Miss. *supra*): "We think such circumstances might arise whereby an invoice could be treated as an inventory within the meaning of the policy."

The court goes on in this case, and says that the invoice made at Pontotoc by Smith cannot be treated as an inventory on the instant case because there was not a shred of evidence in the entire record tending to show that the goods invoiced at Pontotoc ever reached Pentecost, their detination.

In the case at bar the very missing evidence in the above-mentioned case is supplied by appellant's own proof in the direct examination of his men, Borah and Lyle, whereby they were careful to swear that they checked the goods out of the boxes on arrival at the Greenwood store, by the itemized inventory they made at Silver City, when the goods were shipped. Therefore, we say that the case of *Phoenix Ins. Co.* v. *Dorsey,* absolutely demolishes the position of appellant's counsel in this case that this inventory which they were loudly proclaiming to be an "invoice," shall not now be destroyed, because it may appear to be to the interest of appellant to call it in an "invoice."

In the case of *Aetna Ins. Co.* v. *Mount,* 90 Miss. 642, the supreme court of this state said on page 663: "By

the terms of the contract it became the duty of the insured to keep a set of books presenting a complete record of business transacted, including all purchases, sales and shipments from the date the inventory is required to be taken, or through the life of the policy.   In the Mount case there was a change of bookkeepers about the 1st of January, 1905, and a change in the method of keeping the books from a double entry to a single entry.   When this change in the system of keeping books was made the books kept prior to January 1, 1905, were footed up and the aggregate amount of the footings of the old books, showing purchases, sales, shipments, etc., brought forward and placed in the new books so that the new books only contained the footings of the amount shown by the old books.''

The old books from which these footings were taken and charged on the new books in lump sums were destroyed by fire.   The court held, on page 664, the following:   ''We think under these facts there was no compliance with the iron-safe clause.  The reasonable enforcement of the iron-safe clause in insurance policies has been universally upheld by the courts.  Indeed, to prevent fraud, and for a protection of the rights of insurance companies, some such clause seems necessary.''.

From this authority the court will see that our own court, in the Mount case, has held that it is no compliance of the iron-safe clause to enter lump sums of sales and shipments in your books; there must be some itemized statement of the amount of these lump sums kept by the insured so that from the books themselves, without the aid of his testimony the insurance company can determine the accuracy and truthfulness of the entries in the books.

In 2 Cooley's Briefs on Ins., page 1823, the court will see where he lays down the rule as follows:  ''The books must show, with reasonable certainty, a complete record of the insured's business transactions, including pur-

chases and sales for cash and credit." Citing *Phoenix Ins. Co.* v. *Padgitt* (Tex. Civ. App.), 42 S. W. 800.

"If they do not show these facts so as to furnish the data necessary to enable the insurers to test the accuracy of the accounts delivered to them or afford any satisfactory idea of the amount of goods on hand and destroyed by the fire, the insured cannot recover." Citing *Pelican Ins. Co.* v. *Wilkerson,* 53 Ark. 353, 13 S. W. 1103; Ostrander on Insurance (2 Ed.) ; *Everett-Ridley-Ragan Co.* v. *Traders Ins. Co.* (Ga.), 48 S. E. 918.

But, says counsel for appellant, the iron-safe clause only has to be substantially complied with, and that when a policy-holder presents two pages of a book and says: "On one page is what I bought, commencing with my inventory (as claimed in this book on page 124) and on page 125 is my cash sales and shipments" that the company is bound, absolutely, by these figures, although there is nothing in the books to verify or sustain them. That this constitutes a substantial compliance with the iron-safe clause and entitles his client to recover, happily our supreme court has answered that contention and put at rest the idea of such a loose method of collecting an insurance policy which would open the door to the most monstrous frauds imaginable.

In the case of *Phoenix Ins. Co.* v. *Dorsey,* above referred to, decided by the supreme court of Mississippi as above stated on June 17, 1912, 58 So. 778, Judge Cook in that case said on page 780 at the bottom of the left-hand column, that: "No mere proof that there was some merchandise or a large stock of merchandise *in situ* at the time of the fire can be substituted for an inventory. No amount of evidence, however convincing, as to the value of the goods lost can suffice to abrogate the covenant and warranty. The parties to the contract agreed to take an inventory and this inventory, taken according to the contract, is the only evidence competent to prove any loss for which the company is liable, even though it be

conceded that the property described in the policy was
destroyed by fire.   The courts will not attempt to limit
the right of contract and no court can make a contract
which was never agreed to by the parties to the contract.
The courts are not authorized to modify, add to, or sub-
tract from the terms of a vaild contract, and this con-
tract providing for an inventory was entirely valid, im-
posed no hardship, but provides a business method where-
by the rights of the parties could be ascertained and ad-
justed.   Appellee Smith undertook to show that the con-
tract for the taking of an inventory had been complied
with or at least that there was a substantial compliance
with the terms of the covenant and warranty.   He says
that he made out the bill of the goods shipped to his store
at Pentecost at the time the goods were being taken from
his store at Pontotoc to be shipped to his store at Pen-
tecost, etc.''   See, also, *Hamilton* v. *L. L. & G. Ins. Co.*,
136 U. S. 242 and 254, as to the evidence agreed upon by
the parties as expressed in the policy.

This contention was overruled by the court.   In this
case the court very properly holds that the iron-safe
clause as it is denominated in the policy, on which the
appellant seeks a recovery, is a warranty.   The provi-
sion of the clause is as follows:   ''This insurance is ef-
fected subject to the following conditions, which are here-
by made warranties by the assured, and are accepted as
parts of this contract.''

It being a warranty, there is no such thing as a sub-
stantial compliance (as contended for by appellant) with
a warranty.   In volume 1 of the third edition of May on
Insurance, page 293-4, will be found the definition of a
warranty, which he defines as a stipulation by the as-
sured for the absolute truth and strict compliance of the
promised line of conduct upon the penalty of forfeiture
of his right to recover in case of loss should the statement
prove untrue or the course of conduct promised be un-
fulfilled.

Again: "A breach of warranty is fatal though the insured acted in perfect good faith." See, also, *Planter's Ins. Co.* v. *Myers,* 55 Miss. 560.

To the same effect, see Elliott on Ins., section 102, page 87; also, Vol. 16 of the New Edition Ency. of Law, page 9, under the title "Insurance," section B. This doctrine of a "substantial compliance" with a warranty is a paradox. *Goldman* v. *Ins. Co.,* 48 La. Ann. 225.

The supreme court of this state in *Phoenix Ins. Co.* v. *Dorsey,* 58 So. 778, expressly and properly holds the iron-safe clause to be a warranty, and a warranty cannot be dispensed with under this doctrine of "substantial compliance." For the information of those who desire to see the wanderings of the various state courts on the construction of the iron-safe clause in insurance policies, they will be found set forth in the exhaustive footnote on page 698 and following of Vol. 51 of L. R. A.

*Powell & Thompson,* for appellee.

We shall discuss this case under three heads: First, that appellant had taken an inventory previous to the issuance of the policy; second, that the set of books kept by appellant did not clearly and plainly present a complete record of the business transaction including all purchases, sales and shipments, etc., as required under the iron-safe clause in said policy; third, that appellant did not keep his books and inventory securely locked in a fire-proof safe at night nor at all times when the building mentioned in the policy was not actually open for business, or failing in this that assured did not keep such books and inventory in some place not exposed to fire which would expose the aforesaid building.

*First.* In discussing the first point we claim that the inventory offered in this case was a compliance with the iron-safe clause and not a mere invoice.

The best distinction that we can find between an inventory and an invoice is in the case of the *Southern Fire*

*Ins. Co.* v. *McKnight,* 52 L. R. A., 73, where the court says: "An invoice is simply a writing showing the articles sold, with the selling price of each. This may vary greatly from the actual value of the articles. That property including merchandise, is often bought and sold at prices which do not, at all, represent the actual value, is a well-known fact. The invoice price of an article is a circumstance to be considered in determining what is its actual value, but it is far from conclusive on the question. To take an inventory in common parlance is "to take stock;" that is to say, that an itemized list of every article in the store at the time of the inventory, with the actual value of each."

The court will notice by reference to the record that the goods shipped from Silver City to Greenwood amounting to two thousand, one hundred and seventeen dollars and one cent were the first to reach the store in Greenwood and these goods were taken out of the boxes and put upon the shelves in the store at Greenwood, while so doing the inventory which had been taken of them at Silver City was checked off and found to be correct and all the goods shown by the inventory as testified by plaintiff were placed upon the shelves at Greenwood and the inventory contained the actual value of the goods as stated therein.

We contend that this inventory comes squarely up to the requirements as laid down by this court in the case of *Phoenix Ins. Co.* v. *Dorsey,* 58 So. 778. It was intended as an inventory as shown by appellant's testimony. It showed a list of all the goods on hand at the time of the taking and their actual value, and it showed that the goods were actually in the store in which the property was insured and it was made by the proprietor himself. We see no reason then why it should not be such an inventory as was contemplated by the parties under the iron-safe clause of the policy.

*Second.* Assuming then that we have demonstrated that the inventory in this case was a compliance with the

iron-safe clause of the policy, then it follows that the other two clauses, to wit: (a) the insured will keep a set of books which will clearly and plainly present a complete record of the business transactions including all purchases, sales, shipments, etc., both for cash and credit, from the date of inventory as provided for in the first section of this clause and the other provision of this policy, and that the insured will keep such books and inventories and the last preceding inventory if such has been taken in a fireproof safe at night when the building mentioned in this policy is not actually open for business; or failing in this the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building; must be absolutely complied with by the assured or else the policy is void.

These provisions in the policy are warranties and a breach of them or either of them will avoid the contract; quoting from 19 Cyc. of Law and Pro., page 683 we find: "Warranties differ from representations, then, in that falsity of a representation will defeat the contract only where it is material, as representations are merely inducements to the making of the contract, while in case of a warranty the statement is made material by the very language of the contract, so that a misrepresentation of a matter warranted is a breach of the contract itself. Therefore the falsity of a statement which is made a warranty will avoid the contract regardless as to whether it can be considered as material in any way to the risk or the loss." Citing notes 69 and 70 cases from nearly every state in the Union.

Counsel on the other side in his brief concedes that his client, Borah, did not strictly comply with the provisions in regard to his books but claims that he has substantially complied with it; under these conditions, this is not enough. From the books of appellant we cannot tell what he sold for cash or the amount of his cash sales; we cannot tell the items of the shipment from Greenwood

to Silver City or the value thereof. We cannot tell the various items nor the amount consumed by his man Lyle during the two months that he was boarding out of the store. All these things were necessary in order that the insurance company, in case of loss, could take the inventory and the books and find out from these the exact articles burned in the store and this was a matter vitally necessary to the insurance company in properly adjusting the loss. By a casual inspection of the books the court will readily see that no such information is afforded by them.

*Third.* We contend that the assured failed either to keep his books in an iron safe or in some place not exposed to fire in case the building burned as provided for in the iron-safe clause of the policy. We contend that he violated this section in that he did not keep the books in a fireproof safe at night and at all times when the building mentioned in this policy was not actually open for business.

What does it mean by the provision "not actually open for business?" If we are to take the ordinary acceptation of these words, the store in question was not actually open for business at the time of the fire. On the contrary it was locked and barred. No one was in the building. The clerk had left the building some two or three hours before.

The object in the exception to the provision for keeping the books in the iron safe, to wit: That the store shall be actually open for business, was on the theory that at such times someone would be in the store and the books could very readily be taken out in case of fire. For a full discussion of this view see *Joffie, etc., Mankowitz* v. *Niagara Ins. Co.,* 116 Md. 155, 81 A. T. L. 281; American Annotated Cases 1913, ch. 1207, decided June, 1911. Counsel for appellant has cited several cases to show that the store in question was actually open for business at the time of fire. Upon a careful examination of these

cases the court will readily see that not one of them is in point in this case. The case of *Insurance Co.* v. *Schwartz,* 57 L. R. A. 26, cited by counsel, was a case where a fire was raging near by the store of assured and threatened the same and the store was not actually closed up which fact is mentioned by the court in that case. In the case of *Jones* v. *Insurance Co.,* 38 Fed. 19, cited by counsel, the store was open for business and the owner was inside writing up the books.

In the case of *Major* v. *Insurance Co. North American,* 86 S. W. 883, cited by counsel for the other side, the store was not shut up and the court says: "It was still open for business and the customers might have entered and awaited the return of the proprietor who was only absent about ten or fifteen minutes."

In the case of *Mutual Ins. Co.* v. *Jones,* 15 S. W. 1034, cited by counsel, the store was lighted up and the book-keeper who was working up his books stepped out through the open window for only a few moments.

Thus we see that in all the cases cited by counsel on the other side the store was strictly open at the time or somebody was present who, in case of fire, could readily have saved the books, but no such circumstances existed in this case. The store was locked and barred and the proprietor was absent some mile or more and for two or three hours and, in addition, had left his coal oil stove burning with no one to watch it or to save the books in case of fire.

The construction of this phrase "actually open for business" is one of the first impressions in this state, and the court in construing it should give the words their ordinary meaning as clearly understood and not some strained construction, such as would afford a party an opportunity to defraud. This provision of the iron-safe clause being a warranty and vitally essential to the preservation of the data for determining a loss, should not be frittered away by giving the words a meaning different from their ordinary acceptation.

If we are correct in our contention that the parts of the iron-safe clause, providing for the safe keeping of the books, was not carried out, then the action of the court in refusing to permit appellant to reopen his case and show that the articles shipped from Greenwood to Silver City were on the burnt memorandum book, would make no difference as this fact would not be material, the little book itself not being properly protected from fire nor properly kept.

Smith, C. J., delivered the opinion of the court.

Appellant is the trustee in bankruptcy for the estate of A. H. Borah, a bankrupt. Among the assets of this estate was the insurance policy sued on, covering a stock of goods formerly owned by the bankrupt, and which had been destroyed by fire during the life of the policy. The insurance company having declined to pay for the loss of the goods, this suit was instituted. At the close of the evidence a peremptory instruction was given for the defendant, and there was a verdict and judgment accordingly. The ground of this peremptory instruction was the failure of the assured to comply with the iron-safe clause contained in the policy, which clause the reporter will set out in full.

Prior to the month of June, 1911, Borah was conducting a general merchandise business at Silver City, Mississippi. About this time he decided to open a similar business in the city of Greenwood, and thereupon shipped to Greenwood from his Silver City store certain goods, wares, and merchandise, with which, together with some other goods purchased from various wholesale merchants, he commenced business on the 26th of June, 1911. The policy sued on was executed on August 8th, and the fire which destroyed the stock of goods occurred on August 15th. When the goods shipped from Silver City were packed preparatory to shipment a complete inventory thereof was made by Borah, and when they were received

at Greenwood they were checked into the store from this inventory; they being at that time the only goods in the house. Afterwards, and before the store opened for business, other goods were purchased from various wholesale merchants; invoices thereof being by these merchants delivered to Borah and the goods checked into the house from these invoices. This inventory and these invoices were kept by Borah in an iron safe at a place other than the store, and were produced at the trial. His set of books consisted of a small ledger containing several accounts; the only one having any real tendency to show the amount and value of the goods that went into and out of the store being his merchandise account. This account contains, on the debit side thereof, footings of the inventory and invoices of the goods received together with the names of the parties from whom purchased, and on the credit side the following items:

| 1911. | | | Cr. |
|---|---|---|---|
| June 26, by cash acc. C. S. | | | $   3.00 |
| "   " S. C. goods to S. C. | | | 129.91 |
| 27,  "    cash C. S. | | | 4.00 |
| 30,  "   "   C. S. from 28—30 | | | 5.00 |
| July  3,  "    C. S. from 1—3 | | | 4.50 |
| 8,  "   "  "   "   4—8 | | | 13.00 |
| 30,  "   "  "   " | | | 105.00 |
| Aug.  9,  "   "   to Aug. 9 | | | 76.00 |
| 18,  "   Carruthers Jones Shoe Co. | | | 81.70 |

Borah did not stay in this store himself, but it was managed and the business conducted by a clerk by the name of Lyell, who made all of the sales and sold only for cash. Lyell kept a memorandum book on which he entered, each day, the gross amount of cash sales for the day and whatever goods he took out for his own use. He kept no memorandum of the items composing these cash sales. Borah, at intervals, as shown by the credit side of merchandise account, would post these cash sales in his ledger, transferring thereto, not each item, or rather,

the amount of each day's sales separately, but the aggregate amount thereof, in one item, for the time elapsing since he last posted the account. This book was last posted on August 9th. Lyell slept and cooked his meals in the rear of the store, and this memorandum book in which he entered the amount of the daily cash sales was not kept at night in a fireproof safe, or in a "place not exposed to a fire which would destroy the aforesaid building," but was kept by Lyell under his pillow when he retired to sleep. The fire occurred just after six o'clock in the evening. A short time prior thereto, Lyell lighted an oil stove on which he cooked his meals and placed on it some food which he desired to cook for his supper. He then closed, locked, and left the store, went to a barber shop about four blocks away and was there shaved. He then went to a nearby baker shop, purchased a loaf of bread, and returned to the store, being absent altogether, according to his testimony, "forty or fifty minutes; maybe longer." Just before he arrived at the store on his return his attention was called to the fact that it was on fire; and when he arrived he says that the fire was under such headway that he could do nothing to stop it. He had left this memorandum book, in which the daily record of the business was kept, in the store, and it was burned. There was testimony showing that the store was open and sales made after the 9th day of August, the last day on which the merchandise account was posted, up to and including the day of the fire. Lyell stated that when he closed the store he had not closed it for the night, but intended to reopen it on his return, and, as his custom was, to keep it open for business until ten or eleven o'clock.

Appellant's contentions are: (1) That under the terms of the policy Borah was not required to keep a set of books until he had made an inventory of the goods in the store; that he had made no such inventory, and under the policy had thirty days in which to do so, which thirty

days had not elapsed at the time of the fire; (2) if mistaken in this, that Borah substantially complied with that requirement of the policy by keeping the book containing his merchandise account, which account contains a complete record of the goods bought and sold except for the last several days before the fire, which was too short a time in proportion to the full time Borah had been in business, to be material; (3) if mistaken in this, that the book just referred to; together with the memorandum book kept by Lyell, did constitute a substantial compliance with this requirement, and that the policy was not violated by the last-named book being in the store and not in a fireproof safe, or some place not exposed to a fire which would destroy the building at the time of the fire, for the reason that when the fire occurred, the store was actually open for business within the meaning of the policy.

In support of his first proposition appellant's counsel say that the inventory made by Borah of the goods shipped from Silver City to Greenwood was simply an invoice, and not an inventory within the meaning of the policy; and in support thereof we are referred to the case of *Insurance Co.* v. *Bank,* 71 Miss. 612, 15 So. 932. In that case the paper claimed to be an inventory was an invoice of the goods sold which had been checked with the goods by the purchaser prior to, or at the time, of his purchase, and before they were put into the store where the business was conducted.

The paper here in question is not an invoice furnished by a seller to a purchaser, but is a list of the goods, together with their values, which first went into the store, and therefore a list of all them on hand, made by the assured himself, treated by him as an inventory, and preserved and introduced on the trial as such. It complies with all of the requirements of, and must be held to be, an inventory. *Phoenix Insurance Co.* v. *Dorsey,* 58 So. 778.

In order that this iron-safe clause may be complied with it is only necessary that the assured keep such a set of books as will enable an accountant to ascertain from them, together with the inventory, with reasonable accuracy, the value of the goods on hand at the time of the fire. The requirement to "keep a set of books," etc., however, *ex vi termini*, implies that the entries therein shall be at or near the time the transactions entered occurred. The requirement is that a record of the business be kept complete; not made complete for the time being at stated or irregular intervals by the recording of transactions long past.

It was, of course, not necessary for the assured to have posted his ledger each day, and, if he desired, he had the right to post only the gross amount of the cash sales for the interval between the dates of posting; but if he desired to pursue this plan, he should have preserved the book containing the items which were posted to the ledger in gross. The preservation of the book kept by Lyell was therefore necessary in order that this clause of the policy might be complied with, conceding, for the purpose of the argument, that the book introduced complied therewith in all other respects. If the keeping of this ledger alone in the manner in which it was kept should be held to constitute a compliance with the iron-safe clause, it would logically follow that the clause could be complied with by a merchandise account containing only two entries—one a debit of the gross amount of merchandise put into the store, and the other a credit of the gross amount taken out of it.

There is no merit in the contention of counsel for appellant that at the time the store was burned it was actually open for business within the meaning of the policy. The physical fact is that it was closed, the doors locked, and Lyell had gone to another portion of the city, so that it was physically impossible for any business to have been transacted within the store while he was away.

It may be that a temporary absence from the store of all persons in charge thereof may be of such a character as not to violate this clause of the policy, as was held in *Jones* v. *Southern Insurance Co.* (C. C.), 38 Fed. 19, as to which we express no opinion; but such is not the case here. *Joffe et al.* v. *Niagara Fire Insurance Co.*, 116 Md. 155, 81 Atl. 281, Ann. Cas. 1913C, 1217. Lyell not only closed and locked the store, but deliberately left the immediate vicinity thereof, and was so situated for the time being that it was impossible for him to preserve the books when the store burned; and, moreover, neither he nor Borah had in the past, so far as this memorandum book is concerned, complied with the third paragraph of this clause; and there is no indication in the evidence that they had any intention of doing so at the time of the fire or thereafter. It had never been kept, when the store was closed, "in a place not exposed to a fire which would destroy the . . . building," but had always been placed at night when the store was closed, not in a fireproof safe, but under Lyell—a place, of course, exposed to a fire which would destroy the building; that Lyell was nearby, and might have been able to save the book in the event of a fire, is immaterial, for that is not the protection intended to be secured to the insurance company by the clause in question.

*Affirmed.*