MERCHANTS' UNION INS. CO. *v.* JOHNSON.*

(Division B.   May 12, 1924.)

[99 So. 899.   No. 24095.]

1. INSURANCE. *Record warranty in fire policy held to require assured to keep books enabling accountant to ascertain property on hand at time of fire.*

A "record warranty," in a fire insurance policy covering cotton and cotton seed in a gin house, which provides that "the assured

will keep a book, containing a complete and correct record of all cotton put in the gin house or cotton house, and all cotton taken from the gin house, or cotton house, and all cotton seed put in the gin house or seed house and all cotton seed taken from the gin house or seed house, and in case of loss or damage, the assured will produce such book and record for examination by this company, otherwise this entire policy shall be null and void," requires the assured to keep such a book or books as will enable an accountant to ascertain from them with reasonable accuracy the amount of the property on hand at the time of the fire.

2. INSURANCE. *Book containing stubs of gin tickets held not a compliance with record warranty in fire policy on cotton and cotton seed in gin house.*

A book containing the stubs of gin tickets, on which stubs was entered a statement of the date of the receipt of cotton, the name of the owner, the gross weight of the seed cotton received, the tare, the net weight of the seed cotton, the weight and number of the bale, and the net weight of the seed, and the word "delivered" when the cotton was delivered to the owner, and the word "saved" when the seed was carried away by the owner, but which contained no entry whatever showing the amount of cotton or cotton seed sold or shipped by the assured, is not a compliance with this record warranty, and this deficiency as to the seed cannot be supplied by the production of railroad bills of lading of cars of seed shipped, and loose memoranda of weights of seed which purported to have been issued by the purchaser of such seed.

---

*Headnote 1.   Fire Insurance, 26 C. J., section 319;   2.   Fire Insurance, 26 C. J., section 319.

APPEAL from circuit court of Sunflower county.

HON. S. F. DAVIS, Judge.

Action by J. N. Johnson against the Merchants' Union Insurance Company.  Judgment for plaintiff, and defendant appeals.  Reversed and judgment rendered.

*A. A. Armistead,* for appellant.

It is confidently contended for by the appellant in this case that the peremptory instruction asked, directing the jury to find a verdict for the appellant insurance company.

in the court below on account of the breach of the record warranty above referred to, should have been given.

The book that the record warranty requires to be kept which was to show a complete and correct record of the cotton and cotton seed that went in and out of the gin house, was manufactured after the fire. It had not been kept at all. The contract required the plaintiff to keep this book, which should contain a complete and correct record of all cotton and cotton seed that went into the gin and went out, but failed to do it.

"Leaving out of consideration the manufactured sheet introduced in evidence and the manufactured ledger introduced in evidence, because both were made up after the fire, and considering alone the stub tickets as the only kind of a record kept by the plaintiff in the court below, appellee here, the question arises, do these stubs constitute a compliance with the record warranty required by the contract and policy sued on.

It has been repeatedly held that loose memoranda is not a compliance with the provisions of the iron-safe clause "to keep a set of books." *Mounger & Henry* v. *Delaware Ins. Co.,* 79 S. W. 7.

The courts have held that: "A warranty must be performed as written." *Insurance Co.* v. *Myers,* 55 Miss. 479 (at page 500 at bottom); *Citizens National Life Ins. Co.* v. *Swords,* 68 So. R. (Miss.) 920; Elliott on Insurance, sec. 102, 87; 16 Enc. of Law (2 Ed.), 919-920, under title "Insurance"; *Goldman Insurance Co.* v. *Williams,* 237 Fed. Rep. 171.

We therefore say that the warranty to keep a book, showing a complete record of this plaintiff's business in cotton and cotton seed, was clearly breached, for which there can be no recovery.

The trouble about the testimony introduced is that it seeks to let the liability of the appellant insurance company rest solely in the mouth of the plaintiff and his witnesses, whereas if the book required by the record warranty had been kept as contracted to be kept, there would

have been no need of the testimony of any witness, as "the record itself must show the loss without the aid of oral testimony" as all the courts have held. *Penix* v. *American Central Ins. Co.*, 106 Miss. 145; *Ins. Co. of North America* v. *Williams*, 237 Fed. 171; *Goldman* v. *Ins. Co.*, 48 La. Ann. 225.

But looking alone to the stub tickets, they did not show a complete and correct record of all the cotton that went into the gin and all the cotton that went out of the gin, and all of the cotton seed that went into the gin and all of the cotton seed that went out. No accountant could take these stub tickets and from them tell how many bales of cotton had been burned, nor could he tell from these stub tickets how many bales of cotton were still in the gin, nor whether any had been shipped away.

This court will not attempt to make a contract for the parties, nor will it undertake to construe away the contract the parties themselves have made. All the courts hold that they will not make a contract for the parties; that the only function of the court is to construe the one made by the parties themselves. *Ins. Co.* v. *Dorsey*, 102 Miss. 84, at page 87; *Imperial Ins. Co.* v. *Coos Co.*, 151 U. S. 462; *Day* v. *Home Ins. Co.*, 58 So. Rep. (Ala.) 549; *Hartford Fire Ins. Co.* v. *Adams*, 158 S. W. (Tex.) 232.

Applying this doctrine to this case, we insist that the book contracted to be kept, which should show a complete and correct record of all cotton and cotton seed that went into the gin and all cotton and cotton seed that went out of the gin, which record itself unaided by oral testimony would show such information as that an accountant could with reasonable certainty determine the exact amount of cotton and cotton seed that went in and out of the gin, is the only evidence by which any liability could be established against this appellant insurance company, conceding that there was any amount of cotton and cotton seed destroyed by fire.

Therefore, we insist that these bills of lading, and these oil mill receipts proved nothing. They are not a com-

pliance with the contract. There is no record here to show that this was all the seed that was shipped away. There is no record to show what cotton was shipped away. This court cannot tell; no accountant could tell; no record was kept. The liability of this appellant is undertaken to be fixed by the plaintiff and his witnesses in violation of the very contract he sues on, and we insist that under every rule of law, the appellant was entitled to the peremptory instruction requested in the lower court and refused.

*Quinn & Cooper,* for appellee.

Was there a breach of the record warranty? We agree that there must be a compliance with the record warranty clause; that the method of showing the quantity of the burned cotton and seed after a fire is a "complete and correct record," and submit that we have complied with this requirement.

No court in the land, so far as we are aware, has held the insured to literal compliance with this requirement. So long as it is complete and correct it is sufficient. This court is in line with authorities all over the country. *Phoenix Insurance Company* v. *Bourgeois,* 105 Miss. 698, 63 So. 212; *Georgia Life Insurance Company* v. *Friedman,* 105 Miss. 795, 63 So. 214.

Counsel for the insurance company cites with a great deal of reliance, *Penix* v. *American Central Insurance Company,* 106 Miss. 145, 63 So. 346, decided by Chief Justice Smith. In that case the effort of keeping books by the appellant, who was a merchant, was held not sufficient to comply with the requirement of the iron-safe clause, because the original records which showed the cash sales from day to day was kept under the pillow of the bookkeeper, and a fire destroyed the store in which the bookkeeper slept, while the store was locked, and the bookkeeper gone. The court carries in its opinion a portion of the record which shows that no intelligent system of keeping the cash sales was attempted, and that the last records

in the ledger of any cash taken in for merchandise was on August 9. The fire occurred on August 15, and there was absolutely no record of the amount of merchandise sold from August 9, to the date of the fire, that record having been out of the iron safe and under the pillow of the bookkeeper, and was destroyed by fire.

Counsel argued in the brief for the insurance company that the statements or invoices or weight sheets from the oil mill showing the weights of the cars of seed shipped from the gin would not be considered records of the gin, or as a compliance with the record warranty clause; but Judge Cook, in the case of *Phenix Insurance Company* v. *Dorsey,* 102 Miss. 81, 58 So. 778, used this language: "We think such circumstances might arise whereby an invoice could be treated as an inventory within the meaning of the policy."

We have attempted in the statement of facts to show that the records on which we rely in showing the correct quantity of cotton and seed consumed in the fire were complete and correct. There is absolutely no question but that the gin stub books show this information as to the cotton, and as to the seed placed in the seed house. The only leg counsel for appellant has to stand on is concerning the record of outgoing seed.

There were no railroad scales at Holly Ridge. It is common knowledge that small towns do not have the means for weighing freight cars or the contents of freight cars. It is common knowledge that ginners must at least rely on the weighing of cars of seed at the oil mill; that for the purpose of weighing, the oil mill is the agent of the ginner, and the same result would follow as if he were directly hired for that purpose. We are depending on our own records, part of which came to us from our agent in weighing, the oil mill.

If a merchant bookkeeper, under the iron-safe clause, can explain that his ledger shows all outgoing merchandise, and the ledger does show it, then why cannot a gin bookkeeper explain that his record of three cars of outgoing seed are all the records?

The law does not say, in interpreting these record clauses, that oral testimony cannot be introduced to explain the books. If the bookkeeper had attempted to testify that three cars of seed had gone out, without any "complete and correct" record of that fact, that this would have been putting into his mouth a liability, which would have been unjust.

The purpose of this clause is to provide an accurate means of determining the loss, that is, the cotton and seed burned. Any "complete and correct" record of those facts complies therewith. There is no question that this has been done. We are depending on the words of no witness to establish the amount of cotton and seed destroyed. Our records, which are original, complete and correct, establish this fact.

It seems that the courts of the country are uniform in holding that a substantial compliance with the record warranty is all that is necessary. 14 R. C. L. 1140, par. 323; 26 C. J. par. 319, p. 354; *Liverpool & London & Globe Insurance Company* v. *Kearny,* 180 U. S. 132, 45 L. Ed. 460; *Conn. Fire Ins. Co.* v. *Jeary* (Neb.), 51 L. R. A. 698, and note; *Malin* v. *Mercantile, etc.,* (Mo.), 80 S. W. 56; *Scottish Ins. Co.* v. *Moore* (Okla.); 143 Pa. 12; *Continental Ins. Co.* v. *Rosenberg* (Dela.), 74 A. 1073.

*A. A. Armistead,* for appellant in reply.

The legal rights of the parties are determined by the contracts of insurance entered into, which will be construed by the supreme court for themselves, as they are writings and not issues of fact. *Northern Assurance Company* v. *J. J. Newsom Lumber Company,* 105 Miss. 638, 63 So. 209.

It is next contended by the appellee's counsel, notwithstanding the contract sued on, that the insurance policy contained a record warranty whereby it was warranted by the assured, the appellee, that he would keep "a book" containing a complete and correct record of

all the cotton put in the gin house or cotton house, and all cotton taken from the gin house or cotton house, and all cotton seed put in the gin house or seed house, and all cotton seed taken from the gin house or seed house; ''otherwise this entire policy shall be null and void,'' and that this clause is satisfied by the production of weigher's certificates of the weight of the seed shipped out, of which there was no entry made in any record or book as required by the contract, and counsel makes the startling announcement that the weigher of the Refuge Cotton Oil Company, an entire stranger to the contract of insurance, was the agent of both the ginner and the Oil Mill in the weighing of the seed.

We ask the court how can this insurance company be bound by the act of the ginner and the oil mill to whom he has sold the seed out of his gin, of which he makes no record as he contracted to keep? It seems to me that to state the proposition is to answer it.

The contention that because the weigher's receipts and bills of lading were papers in the hands of Johnson, they are competent evidence to prove the loss, is without the slightest merit as the court will see from the authorities cited in our original brief, as it would permit a change of the contract and allow the loss to be proven in a different manner than that contracted for by the parties.

Argued orally by *A. A. Armistead,* for appellant, and *Forest G. Cooper,* for appellee.

COOK, J., delivered the opinion of the court.

This is as appeal from the circuit court of Sunflower county, by the Merchants' Union Insurance Company, defendant in the court below, from a judgment rendered against it on a fire insurance policy covering cotton ''ginned and unginned, baled and unbaled, seed cotton, cotton seed, including sacks or packages containing same,

and bagging and ties,'' only while on the ginnery premises.

To the declaration, which is in the usual form, the defendant filed its plea of the general issue and gave notice thereunder of several defenses, among them being an averment of a breach of what is known as a ''record warranty'' contained in the policy contract; this provision of the policy being as follows:

''It is warranted that the assured will keep a book, containing a complete and correct record of all cotton put in the gin house or cotton house, and all cotton taken from the gin house, or cotton house, and all cotton seed put in the gin house or seed house, and all cotton seed taken from the gin house or seed house, and in case of loss or damage, the assured will produce such book and record for examination by this company, otherwise this entire policy shall be null and void.''

At the trial the appellee offered in evidence a book, called a ledger, containing a record of the dates cotton was received at the gin, the number of the bale, the gross weight of the seed cotton, the weight of the bale, the weight of the seed, and a notation showing whether the cotton, or seed, had been delivered to the owner. It was admitted by the witnesses for the appellee that no such book was kept before the fire, and that the book offered in evidence was made up after the fire which destroyed both cotton and seed, and upon this admission the court excluded this book from the evidence. As a compliance with the record warranty, the appellee was then permitted to introduce in evidence the stubs of what are called the ''gin tickets.'' The evidence shows that the appellee furnished to the cotton weigher, who received and weighed the cotton hauled to the gin, a small book of tickets which are in the nature of blank receipts. When a bale of cotton was delivered at the gin, it was weighed and a blank ticket or receipt filled out, showing the weight of the cotton, and this ticket was then torn from the book and delivered to the owner of the

cotton. There was entered on the stub from which a ticket was torn a statement of the date received, the name of the owner, the gross weight of the seed cotton, the tare, the net weight of the seed cotton, the weight and number of the bale, and the net weight of the seed. The gin manager and cotton weigher who issued these gin tickets, and filled out the stubs thereof, testified that when a bale of cotton was delivered to the owner he wrote on the margin of the stub the word "delivered," and when the seed was not purchased by the gin owner, but was carried away by the owner, he wrote on the margin of the stub the word "saved." The stubs of these gin tickets contained no entry whatever showing the amount of cotton sold or shipped by the gin owner, the appellee, and none showing the amount of seed sold or shipped by him. In an effort to meet this deficiency, the appellee offered, and was permitted, to introduce in evidence the bills of lading issued by the railroad company for certain cars of seed shipped, and also weigher's tickets covering these cars, which were issued by the Refuge Oil Mill Company of Greenville, Miss. Upon this testimony the court below refused the peremptory instruction requested by the appellant, and submitted the cause to the jury under instructions which were in effect peremptory in so far as the question of a compliance with the record warranty is concerned.

There are numerous questions raised on this appeal, but the only one we deem it necessary to consider is whether or not the records kept by the appellee complied with the requirement that the assured should keep a book containing a complete and correct record of all cotton put in the gin house or cotton house, and all cotton taken therefrom, and all cotton seed put in the gin house or seed house, and all cotton seed taken therefrom.

The purpose of the warranty contained in this policy is to prescribe the kind of evidence which may be used to establish the amount of the loss in case the goods insured are lost by fire, and the effect of our decisions is that

stipulations in policies of fire insurance as to the keeping of books showing a record history of the conduct of assured's business with respect to the amount and value of the goods destroyed is to require the assured to keep such a book or books as will enable an accountant to ascertain from them, with reasonable accuracy, the amount or value of the property on hand at the time of the fire. *Penix* v. *American Central Ins. Co.,* 106 Miss. 145, 63 So. 346. In the case at bar the warranty only required the books to show the amount of the property on hand, but the requirement is that the record shall be complete and correct in this respect. No particular method of keeping the books is required thereby, but in order to comply therewith the book or books must themselves furnish the information with reasonable certainty without the aid of parol testimony or loose-leaf memoranda collected from other sources. The parties had the right to so contract, and since the provisions of the warranty are clear and unambiguous, we cannot disregard its provisions and by implication or otherwise construct "a new agreement, on the ground that the purposes which the parties intended to secure may have been unnecessary, or as well secured by other means." *Day* v. *Home Insurance Co.,* 177 Ala. 600, 58 So. 549, 40 L. R. A. (N. S.) 652.

It is unnecessary to here decide whether the stubs of the gin tickets, which were offered in evidence, would constitute a compliance with the record warranty if they contained a complete and correct record of the information required by the warranty. These stubs contain no record whatever of the amount of cotton or cotton seed sold, shipped, or removed from the gin plant, and in this respect they totally fail to meet the requirement of the warranty. From these stubs it would be entirely impossible for an accountant to ascertain, with any degree of accuracy, the amount of cotton or cotton seed on hand at the time of the fire. In so far as the cotton seed was concerned, the appellee attempted to supply this deficiency by introducing certain railroad bills of lading, and

certain loose memoranda of weights which purported to have been issued by a cotton seed oil mill located at Greenville, Miss. This loose memoranda was not admissible as a substitute for the book required by the warranty to be kept. The appellee also undertook to avoid the consequences of his failure to comply with the record warranty by offering in evidence, without explanation as to its origin, a book containing a record of the cotton received and delivered; but, after it had been developed on cross-examination of the witness that this book had been entirely prepared after the fire, it was properly excluded.

We are of the opinion that the appellee failed to show a compliance with the record warranty contained in the policy contract, and that the peremptory instruction requested by the appellant should have been granted.

*Reversed, and judgment for appellants.*