CENTRAL MANUFACTURERS MUT. INS. CO. *v.* ROSENBLUM

(Division A.   Jan. 3, 1938.)

[177 So. 909.   No. 32314.]

**Lotterhos & Travis,** of Jackson, and **Bidwell Adam,** of Gulfport, for appellant.

Carl Marshall, and Mize, Thompson & Mize, all of Gulfport, and Doty & Johnson, of Biloxi, for appellee.

Argued orally by **Fred Lotterhos** and **Cecil Travis,** for appellant, and by **Carl Marshall,** for appellee.

**McGowen, J.,** delivered the opinion of the court.

The appellant, Central Manufacturers Insurance Company, issued to the appellee, James Rosenblum, a

fire insurance policy for $3000, covering the stock of goods in his store at Picayune, Miss.

The appellant plead the breach by appellee of that standard provision in policies covering stocks of merchandise known as the "Iron-safe Clause," alleging that there was no proper inventory of the stock of merchandise on hand as required, and no set of books clearly and plainly presenting a complete record of the business transacted by him.

The policy in question covered appellee's stock of merchandise, and was dated February 4, 1935, and expired at noon on February 4, 1936. In all there was $13,000 insurance covering this stock of merchandise.

On and after January 1, 1935, the appellee had in operation dry goods stores at Picayune, Poplarville, and Gulfport, Miss. It was contended on behalf of the appellee, by his evidence, that the merchandise was totally destroyed by fire. It has been the law in this state that the books of the assured must themselves furnish the information required by the policy with reasonable certainty, unaided by oral testimony, except to explain the method of keeping them, and that the removal by the assured of a considerable portion of his stock to another store, without entering the same on his books of account, violates a policy provision requiring the keeping of a set of books showing all purchases, sales, and shipments, and avoids the policy.

Under the contract here involved, the assured warranted that he would keep a set of books which would clearly and plainly present a complete record of business transacted, including all purchases, sales, and shipments, both for cash and credit, from the date of inventory, as provided in the first section of this clause, and during the continuance of the policy.

The first section of the clause provides: "The assured will take a complete itemized inventory of stock on hand at least one in each calendar year, and unless such inventory has been taken within twelve calendar

months prior to the date of this policy, one shall be taken in detail within 30 days of issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned.''

The jury in this case returned a verdict for the appellee in the sum of $1500, or one-half of the face of the policy.

The alleged books of accounts and inventories and many other papers and books have been sent to this court, and have been carefully examined.

We have reached the conclusion that the alleged books of account are so irregular, contradictory, confusing, and unintelligible that it would be impossible to say therefrom, with any degree of accuracy, what the value of the goods in the store at Picayune was at the time of its destruction by fire.

We will give only an example to show that oral evidence was necessary to establish the loss, testified by the appellant and his witness, the auditor, to be fixed at $17,514.97. A leaf from the ledger kept by appellee at Gulfport showed that on February 8, 1935, the inventory at Picayune amounted to $12,620.06. It is shown by appellee, on February 5, 1935, that he caused to be removed, in bulk, from the store at Poplarville, all the goods therein inventoried a day or two before, and deposited them, without checking them up, in the store at Picayune. If the inventory in this connection was taken on the 8th of February, then the entry on the books show, beyond cavil, that the goods from Poplarville delivered to the store at Picayune are included in that inventory, as shown by that entry. But in order to arrive at the total loss, appellee adds again the invoice of the goods transferred from Poplarville to Picayune. The truck driver who hauled the goods, and his son, testified positively that one truck load of these goods was not delivered to the Picayune store by him, but was delivered by him, at nighttime, to the Gulfport store. The

appellee's brother at the same time carried goods in his car from the Poplarville store to Gulfport. The appellee and his witness orally contradicted the entry on his books as to the date and the amount thereof, but, in their testimony, they did not give an exact date as to when the inventory of the stock of merchandise at Picayune was taken; they varied from January 1 to February 1, 1935. If the inventory was taken prior to February 5th, it was proper to add thereto the value of the goods transferred from Poplarville to the January Picayune inventory, if the goods went into the store. If the ledger showed the correct date, it was not proper so to add it. There is a difference of more than $8000.

The auditor, offered as a witness in behalf of the appellee, testified that from the books there was a total loss of merchandise in the Picayune store in excess of $17,000; but, in so testifying, he necessarily rejected the entry on the ledger at Gulfport and had to adopt the oral testimony as to when the Picayune stock of merchandise was inventoried; namely, as fixed by him, January 1, 1935. The jury rejected this view, as the verdict is in direct conflict with what the auditor claimed to be shown by the books.

There are many glaring inconsistencies and defects in the books. There was no charge in the Poplarville books of an excess of $8000 worth of goods being transferred from that store; there was no entry on the books of the Picayune store of the receipt of such goods; and the only book record thereof is shown by the ledger entry, to which we have above referred, and which was repudiated by the appellee and his auditor. The appellee testified that he kept the books of the Picayune store at Gulfport in an iron safe.

Authorities in this state are uniform with reference to the "Iron-safe" clause in holding that it is necessary as to the keeping of books that the assured keep such a set as will enable an accountant to ascertain from them, together with the inventory, with reasonable ac-

curacy, the value of the goods on hand at the time of the fire. Penix v. American Central Ins. Co., 106 Miss. 145, 63 So. 346; Merchants' Union Ins. Co. v. Johnson, 135 Miss. 311, 99 So. 899; Couch Cyc. of Ins. Law, Vol. 5, sections 1031 to 1032a.

The inventory of the stock of goods in this case was no inventory at all. For instance, in the alleged inventory of the stock of goods at Picayune totaling $13,395.07, there is one entire page recorded with entries such as "Balance on dress and coat . . . $24.38," and on down through eighteen such similar entries.

For the reason indicated, we think the court erred in not granting a peremptory instruction to the appellant. In view of the conclusion we have reached, it is unnecessary to consider the cross-appeal.

Reversed, and judgment here for appellant.