CommerciAL UNION FIRE INS. CO. v. KELLY.*

(Division B.   Jan. 3, 1927.)

[110 So. 681.   No. 25974.]

1. INSURANCE. *Insurer's waiver of inventory provision held for jury.*
   Evidence relative to insurer's waiver of inventory provision in policy *held* to present question for jury.

2. INSURANCE. *Evidence of whether insured's books, containing record of business, were such as were required, held for jury.*
   Evidence relative to whether insured's books, containing records of business, were such as were required under policy, *held* to present question for jury.

---

*Corpus Juris-Cyc. References: Fire Insurance, 26 C. J., p. 553, n. 8; p. 555, n. 12.

144 Miss.—53.

APPEAL from circuit court of Sunflower county.

HON. S. F. DAVIS, Judge.

Action by K. H. Kelly against the Commercial Union Fire Insurance Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

*P. W. Allen* and *R. L. McLaurin,* for appellant.

I. *What was the effect of the failure to produce the inventory under the warranty found in the Iron Safe Clause and pleaded in the first special plea?* That an inventory was not produced as it is required by the Iron Safe Clause, is admitted by the amended replication.

No only was the result not reached by producing an inventory as the Iron Safe Clause requires, but the testimony as offered was not admissible. Plaintiff did not, although a willing witness, in lieu of the failure to produce the inventory, offer any positive testimony or information over the objection of the defendant. His testimony was only a surmise.

Our courts have repeatedly held that the proof as to the amount of the loss must be made by the books. See *Lewis* v. *Nat'l Fire Ins. Co.,* 136 Miss. 576, 101 So. 296; *Phoenix Ins. Co.* v. *Bourgois,* 105 Miss. 698; *Penix* v. *Am. Central Ins. Co.,* 106 Miss. 145; *Nosser* v. *Glens Falls Ins. Co.,* 76 So. 771; *Phoenix Ins. Co.* v. *Dorsey,* 90 Miss. 84; and *Aetna Ins. Co.* v. *Mount,* 90 Miss. 642.

II. *The failure of the assured to keep a set of books as required by the iron safe warranty.* The warranty to keep a correct set of books, or as it is commonly called the "Iron Safe Clause," is set out in full. Let us concede now for the sake of argument that the testimony of the assured as to the conversation between himself and Mr. Brown, the agent, before or at the time of the issuance of the policy relieved him of the necessity not only of taking an inventory but from the necessity of producing it.

We have already shown that there has not been pleaded in this case any waiver of that part of the Iron Safe Clause which would require the assured to produce his inventory for the inspection of the company. Nevertheless, if these conditions of the Iron Safe Clause are eliminated from consideration at present, we earnestly insist that the plaintiff had not kept and produced such a set of books as is required by the Iron Safe Clause.

A starting point must be found in the books, not in the imagination or in the peculiar knowledge of the assured, plaintiff below, and the books should show the amount of the stock of goods on hand at the time the policy was issued. See *Penix v. Am. Cent. Ins. Co.*, 106 Miss. 145. This case is a good illustration of the wisdom and justice of the warranty in contracts of insurance on merchandise which requires the assured to keep a record of all purchases and sales so that the value of the stock of goods can at any time be determined from the books alone. It further emphasizes the soundness of the language of this court in *Aetna Ins. Co.* v. *Mount*, 90 Miss. 663.

The books are wholly insufficient to establish the facts without outside assurance, not only as to the amount of goods on hand on June 4th, but the books kept subsequent to that date were not correctly kept; and for the reason that plaintiff failed to produce such a set of books "which shall clearly and plainly present a complete record of business transacted," plaintiff forfeited his contract and had no right to a judgment for six hundred dollars which was given to him.

*F. M. Featherstone,* for appellee.

The court did not err in refusing to grant the peremptory instruction asked for by defendant. It is true that no inventory was made by Mr. Kelly, but the records show what Mr. L. P. Brown, agent for appellant, waived this clause in the policy in question by advising Mr. Kel-

ly that it was not necessary to make the inventory. Mr. Brown was the soliciting agent for the company and the only agent with whom he did business. This contention has been fully covered in favor of this appellee in *Big Creek Drug Co.* v. *Stuyvesant Ins. Co.,* 75 So. 768.

Appellant claims that appellee did not keep such a set of books as would show a complete record of business transacted. This contention is certainly incorrect. Mr. Kelly certainly did keep a complete record of all purchases as shown by his invoices. An original invoice showing dates, amounts, price, and from whom purchased is the very best evidence which can be kept as it is absolutely the original. The records show that these invoices were kept and were shown to the adjuster. A record of all sales out of the store was kept and these also were shown the adjuster.

*J. L. Williams,* also, for appellee.

It is insisted that the policy sued on is void because of a breach of the Iron Safe Clause, in that the books kept are insufficient and that no inventory was taken or kept. As to the inventory, counsel's argument overlooks the feature of waiver and estoppel. This record presents the questions: Can an agent of the insurance company waive the requirement of the policy as to an inventory? Can he, by his acts and conduct estop the company to set up the defense of a failure to keep an inventory? We insist that he can, and that in this statement we are supported by *Scottish Union & Nat'l Ins. Co.* v. *Wylie,* 70 So. 835; *Big Creek Drug Co.* v. *Stuyvesant Ins. Co.,* 75 So. 768; *Mitchell* v. *Ins. Co.,* 72 Miss. 53, 18 So. 86; *Ins. Co.* v. *Randle,* 81 Miss. 720, 33 So. 500; *Rivara* v. *Ins. Co.,* 62 Miss. 720.

If the Iron Safe Clause can be waived by the agent issuing a policy or if the acts and conduct of the agent at the time the policy is issued may estop the company from defending under the Iron Safe Clause, then cer-

tainly it must follow that the agent may waive the provision of the same clause as to inventory, and the company may be estopped from defending on the ground of failure to produce an inventory by the acts and conduct of the agent when he issued the policy. This would follow as a logical conclusion from the decisions cited from our own court; but we are not left to deduction since our court has already decided it. *Mitchell* v. *Aetna Ins. Co.,* 71 So. 382.

Appellant paid the premium on this policy, relying on the assurance of the agent of the company that he would not be required to keep any inventory.; now that he has lost his all by fire, it would be a great hardship on him if the company should be permitted to defend on this clause of the policy; a right judgment has been reached and this judgment should be affirmed.

ANDERSON, J., delivered the opinion of the court.

Appellee, K. H. Kelly, brought this action in the circuit court of Sunflower county against appellant, the Commercial Union Fire Insurance Company, to recover on a fire insurance policy issued by the appellant to appellee, for a fire loss of the property insured, and recovered judgment in the sum of eight hundred dollars. The judgment followed a directed verdict by the court for appellee in the sum sued for with interest and costs. From that judgment, appellant prosecutes this appeal.

Appellant assigns as error the action of the court in directing a verdict for appellee in the amount sued for. Appellant pleaded the general issue, and, in addition, a special plea. The special plea set up, as a defense, the violation by appellee of provisions in the policy, commonly known as the "iron safe clause," which is as follows:

"(1)  The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of issuance

of this policy, or this policy shall be null and void from such date, and, upon demand of the assured, the unearned premium from such date shall be returned.

"(2)    The assured will keep such a set of books which shall clearly and plainly present a complete record of business transacted, including all purchases, sales, and shipments, both for cash and credit, from date of inventory as provided for in first section of this clause, and during the continuance of this policy.

"(3)    The assured will keep such books, and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fireproof safe at night, and at all times when the building mentioned in this policy is not actually open for business, or, failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building."

The policy of insurance covered appellee's stock of merchandise, consisting chiefly of groceries, in the sum of eight hundred dollars, and store fixtures in which the business was carried on in the sum of two hundred dollars.  Appellant's special plea set up that the iron safe clause in the policy was violated, in that appellee did not take an itemized inventory as required by the warranty in said clause, and that appellee did not keep a set of books which clearly and plainly presented a complete record of business transacted by him, including all purchases and sales, both for cash and credit, as required by the warranty in said clause, and that after the fire appellee was not able to produce such books and inventory for the inspection of appellant—that is, such an inventory and books as would, of themselves, enable appellant to ascertain the loss suffered by the appellee— and that, by reason thereof, appellee had breached the contract of insurance and was not entitled to recover.

To this special plea the appellee filed a replication setting up a waiver by appellant of the inventory provision of the iron safe clause through appellant's agent,

L. P. Brown, who wrote the policy of insurance, and denied that he had failed to keep a set of books containing a complete record of the business transacted, including all purchases and sales, both for cash and on credit, as required by the warranty in the iron safe clause. It is conceded by the appellee that if he failed to comply with either of those provisions of the contract, the policy was avoided, and he was not entitled to recover so far as his stock of goods was concerned.

Appellee admitted in his testimony that, at the time the insurance was effected, no itemized inventory of the stock of merchandise covered by the policy had been taken within twelve calendar months prior to the date of the policy, and furthermore that no inventory had been taken within thirty days after the issuance of the policy; in fact, that no inventory had ever been taken of the stock of merchandise; that such inventory had not been taken, because it had been waived by appellant, and, as constituting such waiver, appellee testified that the insurance was effected through L. P. Brown, appellant's agent, who came into appellee's store, and induced him to take the insurance, and stated to appellee, in answer to a question by the latter as to whether an inventory would be necessary, that he did not think so; that Brown and Harrison (the latter until recently Brown's partner in the insurance business) went through the stock of goods spending something like an hour or two in so doing, and, when they got through, Brown stated that he would write the policy of insurance on the stock of goods for eight hundred dollars and on the fixtures for two hundred dollars; that Brown and Harrison took no inventory at the time, but only went through the stock and estimated its value, and stated that was all that was necessary. Appellee introduced as a witness Harrison, who assisted Brown in going through and estimating the value of the stock. Harrison testified that he and Brown went through the stock of goods, and figured that it was worth about one thousand three hundred dollars, and

that appellee, quoting the language of the witness, "said he guessed he would have to keep books on it, and Brown told him not necessarily, the amount he was taking it would not be necessary to keep an inventory; that he had about one thousand three hundred dollars worth of stuff, and he wanted only eight hundred dollars insurance." He testified further that no inventory was made by Brown and himself at the time they went through the stock of goods to ascertain its value.

Whether the making and keeping of an inventory as provided by the policy was waived by the appellant was a question of intention by the parties. Both parties must have understood that provision of the policy was being waived. Their minds must have met on the proposition. It is true there was no material conflict in the evidence as to what took place between the appellee and the appellant's agent, Brown, at the time the insurance was effected; but there was a question, and we think a serious question, as to the meaning of what took place— as to whether appellant, through its agent, Brown, intended to waive the inventory provision of the policy, and appellee so understood at the time. Different inferences may sometimes be drawn from uncontradicted testimony. There may be two reasonable inferences from uncontradicted testimony—one favorable to the contention of one of the parties, and the other favorable to the contention of the other party. We are of the opinion that it cannot be said that the evidence in this case showed, without material conflict, that appellant waived the inventory provision of the contract. We think that was a question for the jury.

That is also true as to the issue of fact whether or not appellee violated the contract in failing to keep a set of books clearly presenting a record of appellee's business transactions, including all purchases and sales, both for cash and on credit. It is true appellee presented what he claimed to be such a set of books, the originals of which were sent up with the record in this cause. An examina-

tion of these books, in connection with appellee's testimony as a witness in his own behalf, we think, raises a grave question as to whether they were such a set of books as presented a complete record of appellee's business. Appellee admits inaccuracies in the books. These inaccuracies may be so serious as to materially affect the books as a reliable record of appellee's business. Appellee was entitled to a directed verdict for two hundred dollars insurance on the store fixtures.

It follows from these views however, that neither appellee nor appellant was entitled to a directed verdict as to the stock of goods. As we view the record, it is unnecessary to discuss any other question presented.

*Reversed and remanded.*