CASES ARGUED AND DETERMINED

# SUPREME COURT OF MISSISSIPPI

AT THE

## OCTOBER TERM, 1913.

GEORGIA LIFE INS. CO. *v.* JOSEPH FRIEDMAN.

[63 South. 214.]

1. INSURANCE. *Conditions. Keeping books of account. Forfeitures.*

Under a burglary insurance policy the provision in the policy that the company shall not be liable "if the accounts of assured are not so kept that the actual loss may be accurately determined therefrom" should not be technically construed, a substantial compliance with such provision being all· that is required, no particular system of bookkeeping should be required, but such system as is commonly used among merchants in the the same class, and which exhibits a fair showing of the business conducted is sufficient.

2. SAME.

In such case the books are sufficiently kept if they will enable a man of average intelligence to ascertain with reasonable certainty the loss sustained.

3. SAME.

In a suit for loss upon a burglary insurance policy containing such a provision where the plaintiff shows that he was selling

only for cash and on the trial produced, first, the original invoices showing purchase, second, the inventory taken a few months prior to the loss, showing all the goods then in the store, third, the merchandise account book, showing the amount of goods purchased by him from the date of his inventory to the time of the burglary and, fourth, his cash book, showing cash sales from the date of inventory to the burglary, there was sufficient evidence to justify a verdict in his favor where such evidence shows a loss by burglary.

Appeal from the circuit court of Bolivar county.

Hon. Sam C. Cook, Judge.

Suit by Joseph Friedman against the Georgia Life Insurance Company. From a judgment for plaintiff defendant appeals.

The facts are fully stated in the opinion of the court.

*Charles Scott, Sykes & Somerville,* for appellant.

We respectfully submit to the court that section seven of the mercantile rider in this insurance policy, clause "A" of same which states that the company is not liable, "if the accounts of the assured are not so kept that the actual loss may be accurately determined therefrom," simply means that the books of account kept by the insured must show in detail the stock of goods he had on hand at the time of the burglary, so that an inventory taken after the burglary will show the exact amount of goods stolen. This clause is similar to what is commonly termed the "iron safe clause" in fire insurance policies, and the intent and meaning of both clauses is simply that the amount of loss must be ascertained from the books, and the reason is to cut off all temptation to the insured to swear falsely. Or, as is well stated in the case of *Ins. Co.* v. *Mount,* these clauses are "to prevent fraud and for the protection of the rights of their insurance companies."

This clause, embodied in all standard fire insurance policies, commonly known as the "iron safe clause" has

been held valid, binding, legal and effective by the greatest possible weight of authorities, in all other states. See: *Home Ins. Co.* v. *Delta Bank,* 71 Miss. 608, 15 So. 952; *Etna Ins. Co.* v. *Mount,* 44 So. 162, 15 L. R. A. (N. S.) 471; 28 Cent. Digest Ins., section 853; 11 Decen. Digest Ins., section 335.

The universal holding of these citations and all authorities is that the books of the insured must be kept in intelligible and businesslike shape. Mere typographical errors are overlooked and only a reasonable and substantial compliance with the terms of the policy is required, however, no substitute for the books nor any irregular system will be permitted to supply missing or partial book records. *Monger et al.* v. *Deleware Ins. Co.,* 79 S. W. (Texas) 7; *Everett-Ridley-Ragan Co.* v. *Traders Ins. Co.,* 48 S. E. 918.

Section seven of the mercantile rider of the policy herein sued upon provides that the appellant company shall not be liable "if the accounts of the assured are not so kept that the accurate loss may be determined therefrom." This verbiage is simply a change to accord to a burglary policy instead of the formal "iron safe clause" which latter has been approved and inforced by our own supreme court. The case at bar presents to the court for a ruling the validity and effectiveness of that special clause seven. We are unable to find but two authorities from courts of last resort which show the results of a ruling on clause seven or a similar sentence. The appellate division of the New York supreme court in *Pearlman* v. *Metropolitan Surety Co.,* 3 N. Y. Sup. 882, upholds and sustains the legality of a similar clause. *Rosenburg* v. *Peoples Surety Company of N. Y.,* — Sup. 257.

The original books of the appellee herein cannot possibly be understood without his explanation of the system he used, if indeed it can be called a system. A cursory reading of the cross-examination of the appellee

shows numerous and innumerable instances where appellee could not find invoices for items alleged to have been stolen, where he could find no record of such items on his books at all. The books of appellee show under the name of each jobber from whom he purchased, what bills of goods he bought, and the only records of sale is merely the total cash receipts, which gives absolutely no idea whether two pairs of shoes at five dollars each of ten dozen handkerchiefs at one dollars per dozen had been sold or stolen. Appellee claims that all goods alleged to have been stolen were worth their full invoice price, though according to his testimony, some were purchased in 1909, 1910 and for months or years before the alleged burglary. Almost regardless of the questions asked appellee, he merely remembered the loss and could not show on his books where he found such loss. This we submit is not in any way a compliance with the terms of the poilcy. From an examination of the original books, made a part of the record by order of the court, we feel that your honors will see the absurdity of claiming that these irregular lists of accounts with sundry merchants, compose books from which an accurate estimate of the alleged loss of appellee can be determined.

Counsel for appellee from his last few questions evidently will argue that the invoices should be allowed to substitute and supply any missing items on the books. However, in *Monger et al.* v. *Deleware Ins. Co., supra,* the court held that "cash slips" could not be submitted in place of the books. Invoices are not mentioned in the insurance policy, under the terms of which this insurance was written, and cannot be substituted for books. The iron safe clause of the standard insurance fire policies has repeatedly been upheld by our supreme court as valid and binding. *Ergo,* we submit, that the holdings of the New York courts cited *supra* that section seven of the policy herein contested was a reasonable agreement and should bind the appellee, who voluntarily made and en-

tered into this insurance contract; as a condition prece-
dent to a recovery thereupon he must keep his books
and accounts in such condition that an accurate estimate
of the loss can be determined therefrom, and when the
insured keeps such books as are here shown we submit
that the appellant is relieved. We respectfully submit
that these books are not so kept, therefore the *nisi prius*
trial court committed reversible error in overruling mo-
tion of appellant to exclude the testimony of appellee and
instruct the jury to find for the appellant (defendant).

*Whitfield & McNeil,* for appellee.

The sole contention of appellant in this case is that the
plaintiff, the appellee, violated section 7 of the Mercan-
tile Rider in the policy, which is in the following words:
"If the accounts of the assured are not so kept that the
actual loss may be accurately determined therefrom,"
etc. Appellant insists that the court should have given
a peremptory instruction for appellant because appellant
insists that this clause was violated. A result of all the
cases on the iron safe clause, and they are legion, is this,
that the purpose of that clause and of section 7, *supra,*
is that such books or accounts shall be so kept as to en-
able a man of average intelligence by their use, as ex-
plained by testimony, to reasonably reach with certainty
an approximate estimate of the actual loss. All the cases
taken together state this as their uniform result.

We ask the court to read, first, as containing the very
best statement we have anywhere found of the law on
this subject. 2 Cooley's Briefs on Insurance, pages 1823,
*et seq.* The whole law is there condemned very briefly
and very accurately. *Malin* v. *Ins. Co.,* 105 Mo. App. 642;
*Meyer* v. *Ins. Co.,* 73 Mo. App. 173; *Western Assurance
Co.* v. *Redding,* 68 Fed. 708; *Liverpool Ins. Co.* v. *Kear-
ney,* 180 U. S. 136-8; 88 Ill. App. 574; *Aetna* v. *Fitze,*
78 S. W. 371; *Merchants* v. *Dunbar,* 88 Ill. 582; *Brown* v.
*Ins. Co.,* 89 Texas, 594; *Western Assurance Co.* v. *Red-*

*ding,* 68 Fed. 708; *American Central Insurance Co.* v. *Ware,* 65 Ark. 340; 2 Cooley's Briefs, p. 1823; *Security Ins. Co.* v. *Woodson & Co.,* 116 Am. St. 75; *Burnett* v. *American Ins. Co.,* 68 Mo. App. 343; *First Nat. Bank* v. *Cleveland,* 82 S. W. 337; *Prudential Ins. Co.* v. *Alley,* 104 Va. 356; *Peoples* v. *Dully Gorham Co.,* 95 S. W. 152; *Virginia Fire Ins. Co.* v. *Cummings,* 78 S. W. 716; *Con. Fire Ins. Co.* v. *Clark,* 24 Ohio Cir. Ct. 33; *Western Assurance Co.* v. *Altheimer,* 58 Ark. 565; *Western Assurance Co.* v. *McGlatherly,* 68 Am. St. 38; *Liverpool, etc., Ins. Co.* v. *Ellington,* 94 Ga. 785; *McNutt* v. *Va., etc., Ins. Co.,* 45 S. W. 61; *Liverpool, London & Globe Ins. Co.* v. *Sheffy,* 16 So. 307; *Mitchell* v. *Miss. Home Ins. Co.,* 18 So. 86; *Aetna Ins. Co.* v. *Mount,* 44 So. 162.

These authorities establish the following propositions: 1. That no literal compliance whatever with the iron safe clause is required, but only substantial compliance; 2. That no particular kind of bookkeeping is required. That a country merchant need only keep his books in the way customary in country stores and is not to be judged by city methods; 3. That no particular system of bookkeeping is required but whatever system of bookkeeping is common and usual amongst merchants of the same class in the country, is sufficient; 4. That whatever books or accounts may be preserved will, if sufficiently explained by testimony to show with certainty the amount of the loss, satisfy the rule of the iron safe clause, and, 5. That no insured is ever responsible for the absence of the books which are lost or destroyed without his fault.

Reed, J., delivered the opinion of the court.

The store of appellee in Cleveland, Miss., was burglarized on May 21, 1911. He brought suit on a policy issued by appellant to indemnify him for any loss from burglary. He claimed that the value of the goods taken amounted to seven hundred ninety-two dollars and twenty-two cents. The jury returned a verdict in his favor for three hundred and ninety-five dollars.

Appellant assigns as error the refusal by the court to give a peremptory charge to find in its favor on the ground that appellee had failed to comply with section seven of the mercantile rider in the burglary insurance policy. This provision is that the company shall not be liable "if the accounts of assured are not so kept that the actual loss may be accurately determined therefrom." The requirement in section seven is similar to that in the iron safe clause in the fire insurance policies regarding the books which assured must keep. However, the iron safe clause states more explicitly and more in detail what the set of books shall contain. It is said in the case of *Aetna Insurance Company* v. *Mount*, 90 Miss. 642, 44 South. 162, 45 South. 835, 15 L. R. A. (N. S.) 471, that the purpose of the iron safe clause in policies is to prevent fraud, and is for the protection of the rights of insurance companies. This is so concerning the provision in the burglary policy now under consideration. The iron safe clause has been frequently discussed by the courts. This court has had it under consideration in several cases. We gather from the various decisions that a substantial compliance with the provision is all that is required.

Courts do not favor forfeiture of policies for purely technical violations. Counsel for appellant, in their brief, say that section seven "simply means that the books of account kept by the insured must show in detail the stock of goods he had on hand at the time of the burglary, so that an inventory taken after the burglary will show the exact amount of goods stolen." We gather from their argument that they contend the books should show at the end of every day the exact number of all articles in the store—say, the number of hats, pairs of shoes, and so on. We cannot agree with this strict construction of this section. We believe that the books are sufficiently kept if they will enable a man of average intelligence to ascertain with reasonable certainty the loss sustained.

It would be well-nigh impossible to comply with the strict requirement of section seven as it is interpreted by counsel.

Surely no particular system of bookkeeping should be required; but such system as is commonly used among merchants in the same class, and which exhibits a fair showing of the business conducted, is sufficient. It would be difficult to find a set of books in any general merchandise store in towns like Cleveland, in this state, which are kept with such particularity and with such detail as to show every single article which has come into the store by purchase and gone out by sale. It is contrary to the custom of the country to enter upon books in such general merchandise stores each and every article sold for cash. We think that section seven should therefore have a reasonable interpretation and not a narrow one. The books are sufficient if they set forth a fair and intelligent record of the business conducted.

It seems that this is the first time this court has been called on to consider section seven. Counsel for appellant state in their brief that they have only found two authorities from courts of last resort touching the construction of the provision. These are in the cases of *Pearlman* v. *Metropolitan Surety Company,* 127 App. Div. 539, 111 N. Y. Supp. 882, and *Rosenberg* v. *People's Surety Company of New York,* 140 App. Div. 436, 125 N. Y. Supp. 257. But these cases are unlike the case now before us. The facts are different. Therefore they will not help us in reaching a decision herein. In the Rosenberg Case the court in the opinion stated that "there is absolutely no evidence that the assured kept such books and accounts as are called for by the policy. On the contrary, all the evidence is that he did not. . . . The plaintiff undertook to make up his proof of loss by estimating from the marks upon certain empty paper wrappers and pasteboard boxes the extent and value of their contents, which, as he alleged, had been stolen."

In the Pearlman Case the condition of the policy which was claimed was forfeited read: "If the books and accounts of the assured and daily tally of money are not so kept that the actual loss may be accurately determined therefrom, nor unless said loss shall have been established by competent and conclusive evidence." The court in the opinion said: "The plaintiffs did produce some books; but the evidence respecting them, including that of one of the plaintiffs, was to the effect that it was impossible to tell from the books as kept that the goods on hand on any particular day could be accurately determined. As the proof stood there was not sufficient evidence to justify a verdict in plaintiffs' favor."

In the present case the proof shows that the appellee was selling only for cash. Upon the trial he produced (1) original invoices, showing purchases; (2) the inventory taken a few months prior to the loss, showing all the goods then in the store; (3) the merchandise account book, showing the amounts of the goods purchased by him from the date of his inventory to the time of the burglary; and (4) cash book, showing cash sales from date of inventory to the burglary. Appellee, answering from his books, shows articles lost by the burglary totaling in value more than the verdict rendered by the jury. There was sufficient evidence in this case to justify the verdict in appellee's favor. From the books, including the inventory and invoices produced by appellee, he was enabled to establish a loss exceeding the amount of the verdict. The purpose of the provision, section seven of the mercantile rider in the policy, is to enable the insurance company to determine the actual loss sustained. In this case this purpose has been fulfilled. It cannot, therefore, be said that the books of appellee were insufficient.

*Affirmed.*