Sovereign Camp, W. O. W., *v.* Williamson.

(Division A. Nov. 18, 1935. Suggestion of Error Overruled Feb. 3, 1936.)

[164 So. 47. No. 31916.]

Rainey T. Wells, of Omaha, Neb., and Shannon & Schauber, of Laurel, for appellant.

O. B. Triplett, Jr., of Forest, for appellee.

Argued orally by **A. B. Schauber**, for appellant, and **O. B. Triplett, Jr.**, for appellee.

**Cook, J.**, delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Newton county against the Sovereign Camp, Woodmen of the World, in an action based upon the alleged wrongful repudiation by it of an insurance contract covering the life of the appellee. It is admitted that, under the provisions of the constitution, laws and by-laws of the appellant, which were expressly made a part of the appellee's beneficiary certificate, the appellee was suspended as a member of said association, and all his rights under said certificate of insurance were forfeited on account of his failure to pay the December, 1931, assessment thereon. But it is contended that this suspension and forfeiture were waived by virtue of two certain letters hereinafter quoted, written by an officer of the appellant association at a time when the association had full knowledge of the fact that the appellee was in bad health and was unable to comply with the provisions of its constitution and by-laws for reinstatement of suspended members.

On June 1, 1929, upon appellee's warranty that he was then in good health, a new insurance certificate providing additional disability benefits was issued to him in the place of his old certificate. On May 8, 1931, appellee filed an application for total and permanent disability benefits under the new certificate, which showed that he was not in good health at the time the new certificate was is-

sued, and after certain negotiations and litigation between the parties, this new certificate* was canceled on the ground of breach of warranty of good health at the time it was issued, and the old certificate was reinstated and assessments readjusted in accordance with the provisions of the old certificate. Thereafter, the appellee paid his assessments regularly until December, 1931, but failed to pay the December assessment, and on January 1, 1932, his membership in the association became automatically suspended and his contractual rights under his insurance certificate were forfeited.

On January 16, 1932, an officer of the local camp of the association at Decatur, Mississippi, wrote to the president of the association at Omaha, Nebraska, seeking to enlist his interest in securing hospitalization for the appellee, stating in his letter that the appellee was in a very bad physical condition due to asthma in an advanced stage, and that he probably had tuberculosis. The president of the association replied to this letter, inclosed an application blank, and directed that the applicant fill out this application and return it with full details of a physical examination to be made by his attending physician. The record does not disclose that this application was ever returned to the association.

On January 27, 1932, the secretary of the association wrote to the appellee as follows:

"Mr. W. S. Williamson, Hickory, Miss.

"Esteemed Sovereign: The report No. 12 received from the Financial Secretary of your camp shows that you failed to pay installment No. 12 for the month of December, 1931. I think therefore, I should call your attention to the fact that your certificate is valuable and to abandon it now would be a considerable loss to you. Our Association maintains full reserves on all of its outstanding certificates, and in addition has sufficient funds with which to protect the reserves from impairment in the event of an unusual death rate due to catastrophe or epidemic. The Association has in its immediate posses-

sion actual tangible assets amounting to more than One Hundred Million Dollars. Accordingly, there can be no question as to our financial responsibility. It may be possible that your failure to pay has been the result of some misunderstanding on your part. If such is the case, please write me and tell me just what you want to know and I will be very glad to furnish information requested. Of course, it is possible that your failure to pay has been the result of an oversight, and if such is the case you should immediately pay the amount due to the Financial Secretary of your Camp, or in the event that you have already done so, please disregard this letter. For your information, I am inclosing herewith the provisions of Sections 65-68 of the Constitution Laws and By-laws of the Association with reference to the payment of delinquent installments. You will find also enclosed self-addressed envelope for your reply. No postage is required, simply seal and place in Post Office.

"Fraternally yours,<br>"J. T. Yates, Secretary."

With this letter there was inclosed a printed copy of sections 65-68 of the constitution, laws and by-laws of the association. Sections 65 and 66 read as follows:

Section 65. "Any member who becomes suspended because of the non-payment of any installment of assessment, if in good health, may within three calendar months from the date of his suspension again become a member of the Association by the payment of the current installment of assessment and all installments of assessments which should have been paid to maintain him as a member. Whenever assessments are paid by or for a person who has become suspended for the purpose of again making him a member, such payment shall be held to warrant that he is, at the time of making such payment in good health, and to warrant that he will remain in good health for thirty days after such attempt to again become a member, and to contract that such assessments, when so paid after he has become suspended for non-

payment of assessments shall be received and retained without waiving any of the provisions of this section, or of these laws, until such time as the Secretary of the Association shall have received actual, not constructive or imputed, knowledge that the person was not, in fact, in good health when he attempted to again become a member. Provided, that the receipt and retention of payment of such installments of assessments, in case such person is not in good health, shall not make such person a member or entitle him or his beneficiary or beneficiaries to any rights whatever.''

Section 66. (a) ''The retention by the Association of any installment of assessment paid by or for any person after he has become suspended in order to again make him a member, shall not constitute a waiver of any of the provisions of this Constitution, Laws and By-laws, or an estoppel upon the Association. (b) Any attempt by a suspended person to again become a member shall not be effective for that purpose unless such person be, in fact, in good health at the time, and continue in good health for thirty days thereafter, and the payment of any assessment shall be a warranty that such person is, at the time, in good health, and that if the warranty is not true, the certificate shall be null and void.''

On receipt of this letter, the appellee paid his December assessment and the January, 1932, assessment, then currently due, and received receipts therefor reciting on the face thereof as follows: ''If any part of the above amount is paid for the purpose of again becoming a member after the membership of the person named above has been terminated by suspension, it is received upon the condition and agreement that said sum so paid on account of said person shall not restore him to membership except as provided by the Constitution, Laws and By-Laws of the Sovereign Camp Woodmen of the World, nor unless said person has complied with the provisions of said Constitution, Laws and By-Laws with respect to again becoming a member.''

On February 27, 1932, the president of the association wrote to the appellee as follows:

"Mr. W. S. Williamson, Hickory, Miss.

"Esteemed Sovereign: The secretary of the Association, Mr. John T. Yates, has just advised me that no remittance was made on your account in the report of the Financial Secretary of your Camp covering the December installment for the year 1931. Inasmuch as no remittance has since been made by the Financial Secretary of your Camp on your account, I am convinced there is some misunderstanding. I am sure that you are desirous of having in force the protection heretofore afforded your dependents and loved ones, and if you have not already done so, you should, at once, remit the necessary amount to the Financial Secretary of your Camp, in order that your insurance may be in force and your interests protected. I am interested in the welfare of your family and yourself, and I believe that you will appreciate our persistency in calling this matter to your attention. This Association, from the standpoint of meeting its obligations, is as strong as any other life insurance Association in the World. Indeed, it is stronger than many of them. It, therefore behooves you to do everything possible to provide this while there is yet an opportunity to do so. It may be possible that you do not fully understand the benefits and privileges accorded to you by membership in our Association, insurance protection for your family, fraternal affiliation nation wide, free treatment for tuberculous members at our War Memorial Hospital, San Antonio, Texas, and many other activities for the benefit of the membership generally. You cannot afford to lose these benefits. Perhaps you have made your payments, but through an oversight they have not been reported by the Financial Secretary. If this is the case, kindly send me your receipts or any other evidence of payment and your interests will be properly cared for. In any event I would very much like to hear from you. You will find enclosed a self-addressed envelope for your

reply. No postage is required, simply seal and place in Post-Office.

"Truly and fraternally yours,

"W. A. Fraser, President."

On March 1, 1932, the secretary of the association wrote a letter to the secretary of the local camp, of which the appellee was a member, acknowledging receipt of the December and January assessments paid by the appellee, and calling attention to the appellee's previous application for admission to a hospital, and stating that these payments could not be accepted until the assured underwent a medical examination and furnished a proper physician's certificate of good health approved by the Medical Director. These assessments were afterwards returned to the appellee, and there was other correspondence between the parties which has no material bearing upon the issues presented for decision.

The appellee relies upon the two letters quoted in full above as establishing a waiver of the forfeiture of his insurance certificate. The basis of the argument on this point is that, since the appellant association had knowledge of the fact that the appellee was in bad health when he attempted to renew his certificate in June, 1929, and also had notice of the fact that he was not in good health in January, 1932, and consequently knew that the appellee could not qualify for reinstatement under the provisions of the constitution, laws, and by-laws of the association, these letters urging him to pay up his assessments and maintain his insurance indicated an intention to waive the forfeiture, and were sufficient to warrant a finding of waiver.

We recognize the doctrine previously announced by this court that forfeitures are looked upon with disfavor, and that slight circumstances, indicating an intention to waive a forfeiture on an insurance policy, will support a finding of waiver, Stonewall Life Ins. Co. v. Cooke, 165 Miss. 619, 144 So. 217, but we have reached the conclusion that the letters in question are not sufficient to support

a finding of waiver. Appellee particularly stresses the statement in the first letter that "your certificate is valuable and to abandon it now would be a considerable loss to you," and the further statement that "it is possible that your failure to pay has been the result of an oversight, and if such is the case you should immediately pay the amount due to the Financial Secretary of your Camp, or in the event that you have already done so, please disregard this letter."

The last above-quoted statement, as well as the statement in the second letter that, "perhaps you have made your payments, but through an oversight they have not been reported by the Financial Secretary," indicate some uncertainty in the minds of those officials as to whether or not the appellee was actually in default. Furthermore, in the first letter, appellee's attention is called to the provisions of the constitution, laws, and by-laws of the association expressly providing that a member in default could be reinstated only while in good health, and that any payment of past-due assessments by him would be his warranty that he was, at the time of making such payments, in good health, and that he would remain in good health for thirty days after such attempt to be reinstated, and copies of these provisions of the Constitution, laws, and by-laws were inclosed with the letter.

These officers also presumbably knew that if any sum was paid for the purpose of securing reinstatement, the official receipt to be issued therefor would contain the statement that the amount was received upon the condition and agreement that the sum so paid would not restore the person in default to membership, except as provided by the constitution, laws, and by-laws of the association, and until such person had complied therewith in respect to becoming a member. From the mere statement in the letter from a third party that the appellee was then in bad health and in need of hospital facilities, the general officers of the association would not have been justified in finally concluding that the appellee could

not qualify for reinstatement within the extended period allowed for reinstatement if in good health, and so long as the right to reinstatement existed, or might be acquired, the insurance certificate was of value to the suspended member. The officers of the association could not determine, and would not be permitted to then determine for themselves that the appellee could not qualify for reinstatement, within the extended period allowed therefor, if, in fact, he were in good health at the time of the payment of the past-due assessments.

It seems clear to us that the sole purpose of the first letter, wherein appellee's attention was particularly called to the provisions of the constitution, laws, and by-laws permitting reinstatement only while in good health, was to direct appellee's attention specifically to his rights, and to give him full opportunity to avail of them, if he were able to do so.

What we have said in reference to the first letter applies equally to the second, wherein some uncertainty was expressed as to whether the appellee was in default for the December assessment, and he was urged to maintain his insurance in force, and to provide this protection for his family "while there is yet an opportunity to do so." The testimony is to the effect that appellee was familiar with the provisions of the constitution, laws, and by-laws in reference to the reinstatement of suspended members; that on receipt of the printed copies thereof which were inclosed with the first letter, he again read and then understood these provisions; and we are of the opinion that there is nothing in either of the letters to indicate an intention to waive the provisions of the constitution, laws, and by-laws in appellee's case, and nothing that would warrant a finding of waiver.

Reversed, and judgment here for the appellant.