STEWART, et al. *v.* AMERICAN HOME FIRE INS. CO.

Division B. Apr. 23, 1951.

No. 37938 (52 So. (2d) 30)

Morse & Morse, for appellants.

Wallace, Greaves & Wallace, for appellee.

**Ethridge, C.**

Appellants, H. V. Stewart and Roy Boone, were the insured under a fire insurance policy issued by appellee, American Home Fire Insurance Company, covering their dry cleaning and pressing shop in Poplarville, Mississippi, known as Modern Cleaners. The policy was issued on January 6, 1948, and on the night of December 24th of that year the shop was totally destroyed by fire at a time when it was closed. The policy was a standard fire insurance contract and covered under one item, furniture, fixtures, equipment, and supplies, and under another item, "clothing cleaned, being cleaned, and not delivered while contained in above described building." Appellee paid appellants' claim for the first item on March 1, 1949, but denied liability for the latter, on the grounds that appellants had failed to comply with a provision in the policy to keep records of the clothing in their possession, and that appellants had executed a release or accord and satisfaction.

The policy contained a standard iron-safe clause which applied "only to merchandise on storage or for sale." This clause does not apply to the losses

in question, as appellee virtually concedes in failing to base its argument upon it. It does not cover a bailment relationship such as the present one, where the owners of the clothes placed them in the hands of appellants as bailees to clean them. 6 Am. Jur., Bailments, Secs. 13, 14. Further, a rider attached to the policy covered expressly this type of insured property, and it conflicted in several respects with the merchandise iron-safe clause. Where there is a conflict between a clause in a standard printed policy and a rider attached to it, the rider controls. Chamden Fire Insurance Association v. New Buena Vista Hotel Company, 1946, 199 Miss. 585, 24 So. (2d) 848, 26 So. (2d) 174; 29 Am. Jur., Insurance, Sec. 162. The controlling provision is as follows:

"Record Warranty Clause
Customer's Goods, Laundry and
Dry Cleaning Plants

"It is warranted by the insured that they will keep such records as will show at all times such goods and articles as they are liable for and held by them in trust at the time of the loss, if any, and will keep such records securely locked in a fireproof safe at night and at all times—when the building mentioned in this policy is not actually opened for business—and failing in this the insured will keep such books and records in some place not exposed to fire which would destroy the above said building. In event of failure to produce such books and records for the inspection for the Company—this policy shall become Null and Void."

██ At the trial in the Circuit Court of Pearl River County, both of the appellants testified, and the trial court then sustained appellee's motion to exclude appellants' evidence and direct a verdict for appellee, from which this appeal is taken. Accordingly, for purposes of this appeal, we must accept as true the believable evidence of appellants and reasonable inferences from it.

With reference to the sufficiency of the records, appellants had the following bookkeeping system: They

had pads of small daily sales slips for each of the 26 letters of the alphabet. As the clothes were brought in by the owners, appellants would write upon a slip in the proper alphabetical pad the type of garment and the kind of service to be rendered. A carbon copy was made and the original was pinned to the garment. Each night the carbon copies of these daily sales slips from the alphabetical pads were posted by the same being written in longhand and in pencil in a general ledger. As the clothes were redelivered to the customer, the sales slip would be removed from the clothing and appellants would mark that entry off in the general ledger by drawing a line through it. These pads of daily sales slips and the general ledger were kept in a wooden box on the front counter in the shop. Six or seven weeks after the fire appellants, who had thought that the general ledger and all of the sales pads had been destroyed, found the general ledger and ten of the daily sales pads in the bottom of a box which someone had removed from the shop when the fire had begun. The clothes that came in on December 24th, the day of the fire, are not reflected in this general ledger because they had not been posted, but appellants testified that all clothing which had been removed from the shop before the fire had been struck off the general ledger. Sixteen of the 26 daily sales slips were destroyed, but appellants said that all the remaining ones would reflect would be additional clothing brought into the shop on December 24th. The general ledger contains only the dates of October 1, November 1, and December 1, 1948. Following each of these dates, placed in the top of the ledger sheet, are several pages of listings of the owners and identity of clothing brought into the shop. Many of these entries have lines drawn through them, which appellants testified show that the cancelled items had been redelivered to the owners. Following those pages in the general ledger is a list of what purports to be a list of "clothes lost in fire", but that was prepared after the fire and is incompetent as a record

for the purposes of this suit. The trial court excluded testimony of the owners of the clothes destroyed for the purpose of showing their value, because "the books must show the value of the property destroyed, and . . . this value can not be proved orally."

We think that the trial court erred in excluding the offered testimony of the owners of the clothing for the purpose of establishing its value. It is true that in the construction of the merchandise iron-safe clause the courts have held that the books must themselves furnish with reasonable certainty, the information required by the policy, both the amount and value, unaided by oral testimony except to explain the method of keeping the books. Note, 39 A. L. R. 1443, 1457 (1925); Note, 62 A. L. R. 630 (1929); Note, 125 A. L. R. 350, 358 (1940). The present record warranty clause must be interpreted in the light of its own peculiar terms and of the facts. It does not require the keeping of records by a dry cleaner to show the value of clothing in his possession. The insured agreed to keep "such records as will show at all times such goods and articles as they are liable for . . ." This provision, which is considerably different from the merchandise iron-safe clause, refers to the identity and amount of the clothing as distinguished from its value. This is in accord with the nature of the insured transaction. As a practical matter, it would be most difficult for the books of a dry cleaner to show the value of the clothes which he is processing. It could be done only by an estimate of either the owner or the bailee when the clothes are brought in. The inaccuracy and inconvenience of such a method is apparent. The danger of fraud is not present in a bailment relationship in the degree it is where the insured is the owner of the clothing. The motivation for misrepresentation is reduced to a minimum. Moreover, the standard merchandise iron-safe clause applies to an entirely different type of situation, merchandise on storage or for sale, from the record warranty clause for a dry cleaning shop,

which covers clothing bailed to the processor. Under the former situation, the insured can obtain the value easily by ascertaining what he paid for it through invoices or from other purchase records. We see no basis for implying from this record warranty clause a requirement that a dry cleaner's books must reflect the value as well as the identity and quantity of the clothing in its possession. With no such requirement existing, the best method of proving the value of the clothing would be by oral testimony of the owners. ██ It also follows that the general ledger book should have been admitted into evidence. The daily sales pads are relevant on the method of keeping the ledger.

Merchants' Union Insurance Company v. Johnson, 1924, 135 Miss. 311, 99 So. 899, does not preclude the use of such testimony. The terminology of the record warranty clause in that case, which was in a policy insuring a cotton gin, was entirely different from the present one and more detailed in its requirements. The records there offered were a ledger made after the fire, the stubs of gin tickets containing no entry of the amount of cotton or cotton-seed sold or shipped, and bills of lading and weighers' tickets covering cars of seed shipped, which were loose memoranda not complying with that particular clause.

Here the testimony is clear as to the method of keeping the general ledger. It was a question for the jury from all of the evidence to determine whether or not the ledger book was a substantial compliance with the terms of the policy. Commercial Union Fire Insurance Co. v. Kelly, 1926, 144 Miss. 833, 110 So. 681; 46 C. J. S., Insurance, Section 1369, pages 601-602; 29 Am. Jur., Insurance, Section 1534, page 1154; Notes, Sufficiency of Bookkeeping to Satisfy Condition of Insurance Policy, 39 A. L. R. 1443, 62 A. L. R. 630, 125 A. L. R. 350; Note, 51 L. R. A. 698 (1901). ██ A substantial compliance with the terms of a policy requiring the keeping of a set of books is all that is necessary in order to warrant

a recovery on the policy. Georgia Life Insurance Company v. Friedman, 1913, 105 Miss. 789, 63 So. 214; Lewis v. National Fire Insurance Underwriters, 1924, 136 Miss. 576, 101 So. 296; Phoenix Insurance Company of Hartford v. Bourgeois, 1913, 105 Miss. 698, 63 So. 212; Penix v. American Central Insurance Company, 1913, 106 Miss. 145, 63 So. 346; 29 Am. Jur., Insurance, page 557; 5 Appleman, Insurance Law and Practice (1941), Sec. 3024 et seq. Appleman, at Sec. 3025, says that "no particular form of bookkeeping is required of the insured, and though the system be primitive or informal, it is sufficient if it furnishes the information desired."

Analogous to the present case is Mord v. New York Indemnity Company, 1926, 216 App. Div. 252, 214 N. Y. S. 693, 695, affirmed in 1927, 244 N. Y. 589, 155 N. E. 908. There the insured was in the business of dressing furs belonging to others. Some of these furs were stolen from the insured's truck. The insurance company defended on the ground that the books and accounts of insured did not comply with the requirement of the policy, that insured keep records showing the amount of furs in his possession. On the trial, Mord, the insured, offered in evidence testimony of the owners of the furs for the purpose of showing their value, and also offered books of the owners for the same purpose. The records of Mord reflected the amount and identity. The Court held that the insured was entitled to prove the value of the furs by the offered evidence. It further said:

"While I am inclined to think that this evidence was competent, despite defendant's objection that it had no right to use the customers' books, and that it had 'no relation with the customers,' there can be no doubt that defendant appellant is here, asserting that it is not obliged to resort to any books other than those kept by the assured; that the precise amount of the loss must be disclosed on their books. I think the argument and the cases cited by appellant's counsel have no application to the situation disclosed here. As matter of fact, the

books of the Fur Dressers' Company contained all the necessary information, except the value of the goods sent to them for treatment; an important item, to be sure, but one as to which from the very nature of the business the assured could make no entries in their books. They had no independent knowledge of the value of these goods at the time of their receipt. Their books gave the name and address of the owner, a description of the particular pieces of fur sent to the assured for treatment, with the day and date of receipt and redelivery.

"Where the assured is the owner of merchandise covered by an insurance policy, and seeks to recover, it is only reasonable that his books and accounts should show reasonable compliance with the requirement of the policy, and contain evidence'of the value of the property. In the case of the assured in the case at bar, any statement on the books concerning the value of the skins consigned to it for treatment would necessarily be hearsay."

This case was followed in Licht v. New York Indemnity Company, 1928, 250 N. Y. 211, 164 N. E. 910. In both the Mord and the present case the insureds were bailees of clothing for the purposes of cleaning and processing it. In both cases the records reflected the amount of clothing but not its value.

There was also ample evidence to go to the jury on whether appellee waived the record warranty clause, and on whether it was estopped to claim under it. Appellants' testimony was to the effect that general agent Smith and Miazza, a claims adjuster for appellee, advised them on different occasions that if they could not locate the books and the owners would turn in their claims, appellee would pay them, and that appellants then obtained written claims for the clothing from the owners. This testimony constituted an adequate basis for submitting to the jury the issues of waiver of and estoppel to assert the record warranty clause. Fidelity-Phenix Fire Insurance Co. v. Redmond, 1927, 144 Miss. 749, 111 So. 366; 45 C. J. S., Insurance, Section 738; 29

Am. Jur., Insurance, Secs. 801, 872, 875. For example, in Mitchell v. Aetna Insurance Company, 1916, 111 Miss. 253, 71 So. 382, the fire policy required assured to take a complete inventory on the merchandise in his store each year. Appellant furnished the general agent of appellee with an inventory which was not itemized as the policy required, but the agent of appellee advised appellant that it was "all right". Later, the store burned. It was held that appellee was estopped by the conduct of its agent in accepting the inventory to now contend that it was not a compliance with the policy. See also World Fire & Marine Insurance Co. v. King, 1939, 187 Miss. 699, 191 So. 665; Mississippi Home Insurance Co. v. Dobbins, 1902, 81 Miss. 623, 33 So. 504; Liverpool & London & Globe Insurance Co. v. Sheffy, 1894, 71 Miss. 919, 16 So. 307; 5 Couch, Cyclopedia of Insurance Law (1929), Sec. 1037.

 █ Appellee pleaded a release by appellants of appellee from all further liability under the policy. On February 23, 1949, Miazza, claims adjuster for appellee, wrote appellant Stewart, enclosing proofs of loss "for the loss of equipment and supplies". He further advised Stewart that appellee denied liability for the clothing because the records were destroyed. The proof of loss for equipment and supplies was prepared by appellants, and appellee sent them a check dated March 1, 1949 for $1200.00 constituting "full satisfaction of all claims and demands for loss and damage" occurring under the policy on December 24th. Appellants endorsed the check. They testified that Smith brought to them the proof of loss form and told them that it was only for the machinery and supplies and not for the clothing, that the company would make a settlement for the clothing later on, and that they relied on his representation. They said that upon receiving the check, they went to Smith and endorsed it in his presence; that before they signed it, Smith told them to go ahead, that it covered only machinery and supplies and that a settlement at a later

date would be made on the clothes. They also testified that Miazza told them that the proof of loss which he would send them would cover only equipment and supplies, and that appellee would go ahead and pay the claim on those items and would make adjustments for the clothing later; and that they relied on these representations. We think that this evidence was sufficient to go to the jury on the issue of whether appellee is estopped to plead a release or accord and satisfaction because of the alleged misrepresentations of appellee's agents and the reliance on them by appellants in making the proof of loss on the equipment and supplies and in endorsing the check. Randolph Lumber Company v. Shaw, 1935, 174 Miss. 297, 164 So. 587; 46 C. J. S., Insurance, Section 1377, page 658.

Reversed and remanded.

PER CURIAM.

The above opinion is adopted as the opinion of the Court, and for the reasons therein indicated, the cause is reversed and remanded.