CONTINENTAL INSURANCE CO. *v.* THRASH.

No. 39494 March 7, 1955 78 So. 2d 344

*O. B. Triplett, Jr.,* Forest; *Watkins & Eager,* Jackson, for appellants.

*Roy N. Lee,* Forest; *W. W. Pierce,* Jackson, for appellee.

Holmes, J.

This appeal involves four policies of insurance issued to the appellee, Emmett Ross Thrash, by the Continental Insurance Company, New Hampshire Fire Insurance Company, Paramount Fire Insurance Company, and National Fire Insurance Company of Hartford, insuring the appellee's concrete block building for $6,000, and the

contents thereof for $4,500, as against loss by fire, the liability of the said companies being pro rata. The building and contents located in Sebastapol, in Scott County, Mississippi, were wholly destroyed by fire on June 16, 1953. The loss as to both items, that is, the building and its contents, is conceded to be total. Four separate suits were filed in the Circuit Court of Scott County, one on each of said policies. By agreement of the parties, the cases were consolidated. The case against the Continental Insurance Company was selected to be tried, and it was agreed that the result of that case would control the others. Judgment was rendered for the plaintiff in the case tried and a general judgment was thereupon entered against each of the companies for such company's pro rata share of the loss. This appeal is from the judgment entered and it is likewise agreed on this appeal that the decision of the court in the case against the Continental Insurance Company shall control the decision in the other cases which are also here on appeal.

It is conceded by the appellant that the judgment of the court below should be affirmed as to the coverage on the building. Hence there is involved on this appeal only the coverage on the contents of the building consisting of merchandise and fixtures.

The material facts are substantially as follows: In March, 1953, the appellee, Emmett Ross Thrash, was engaged in the general mercantile business in Sebastapol in Scott County, and had been so engaged for about eleven years. His stock consisted of groceries, dry goods, shoes, small hardware, and general merchandise. For some four and one-half years, he had conducted his business in a concrete block store building which he constructed and owned in Sebastapol, and which was about 62 feet long and 28 feet wide. He had previously conducted his business in a smaller building which he owned and which he sold after he moved into his new building. He also owned his home, which was located about 500

yards north of his store building. He decided to insure his store building, being prompted to do so by the recent occurrence of wind storm damage in the area. He knew of no insurance agency in Sebastapol and he went to Newton, where he applied for insurance to the Newton Insurance Agency, Inc., conducted by Mrs. L. E. Wilson, and conceded to be the general agent for the insurance companies here involved.

According to his testimony, he applied for insurance on his store building only but was induced by the suggestion of the agent to take insurance on the store building and its contents, and on his home and household furniture. Mrs. Wilson and her employee, Mrs. Albert Stevens, denied that they or either of them made any suggestion as to the insurance coverage. The insured testified that when he applied for the insurance, Mrs. Wilson inquired if he had an iron safe and he told her that he did not, but that he kept his books and records at home at night, and she then inquired as to the kind of books and records he kept and he told her that he kept his daily sales, his inventories, and his charge accounts, and that as to his charge accounts, he kept them on a sales pad and that when a customer paid his account in full, he surrendered to him all of his sales tickets. The insured further testified that after disclosing to Mrs. Wilson the aforesaid method of keeping his books and records, Mrs. Wilson said "that was enough" and thereafter the insured paid the required premium and there was issued to him four policies of insurance, each covering pro-rata fire and extended coverage to the total amount of $6,000 on his concrete block building, $4,500 on its contents, $2,000 on his home and $1,000 on the household furniture and personal property in the home. The policies so issued are the ones here involved.

Mrs. Wilson did not deny the conversation which the insured claimed to have had with her with reference to the kind of books and records which he kept, but said she did not recall it. Mrs. Stevens said that the insured had

no such conversation with her. There is no contradiction, therefore, of the testimony of the insured that he fully disclosed to the general agent his method of keeping his books and records and that she approved it and thereupon collected the premium and issued the policies. There is conflict in the testimony as to whether the policies were mailed to the insured or delivered by Mrs. Wilson in person. It is undisputed, however, that Mr. Wilson, about a week later, went to the place of business of the insured in Sebastapol and there viewed the store building and the stock and fixtures of the insured and thereafter continued the policies in force. The policies are dated March 11, 1953.

About one o'clock on the early morning of June 16, 1953, the store building and its contents were destroyed by fire resulting from an unknown origin. The insured was at home in his bed. His books and records were in his home. Upon being awakened and apprised of the fire, he and his wife went to the scene. The fire had so far progressed that nothing could be saved except three dress lengths in the window of the value of $1.75 each, and five spools of wire worth $7.14 or $8.14 each. The loss is conceded to be total. The agent at Newton received prompt notice of the fire and notified the adjustment bureau. An adjuster was sent to the scene, as was also the auditor for the company, to check the insured's books and records. The insured submitted to them his inventories taken January 1, 1953, consisting of an inventory of his fixtures showing a total value of $1,529.50, and an inventory of his stock of goods and merchandise showing a total of $6,481.33, his record of daily sales, his credit sales pad, his invoices, a list of his invoices, and there was later produced a record kept by the insured's wife showing the merchandise taken from the store for home use for the period from January 1, 1953 to the date of the fire. J. W. Coche, the auditor for the appellant, testified that the inventories taken January 1, 1953 were made available to him and that there was fur-

nished him by the insured a notebook containing purchases of goods from January 1, 1953, a notebook of sales for the same period, charge items, and accounts receivable outstanding. The auditor for the appellant testified that he could not determine from the books and records the amount of the loss, but nevertheless, he determined from the books and records furnished him that the value of the goods and stock of merchandise at the time of the fire was $7,700.92. Troy Sloan, a certified public accountant of some eight years' experience, employed by the insured, examined the books and records of the insured and determined therefrom that the value of the merchandise at the time of the fire was $7,717.77. He testified that for insured's type of business, his records were as good as he had had any occasion to work with for a similar business, and that from the records he was able to ascertain with reasonable accuracy the amount of merchandise the insured had at the time of the fire. The insurance companies furnished no forms to the insured for proof of loss and failed to adjust the loss. The insured appealed to the general agent. The general agent, Mrs. Wilson, testified that the insured had done everything **required of him under the policy** and that the policy was in full force and effect at the time of the loss. She went with the insured to the adjustment bureau in Jackson seeking an adjustment of the loss. They were informed there that all of the companies had been heard from except one and they were waiting to hear from it. No adjustment was made and the insured obtained forms and submitted his proof of loss, claiming the value of the fixtures to be $1,529.50 and the value of the merchandise to be $7,376.76 at the time of the fire. Upon failure of the insurance companies to pay the loss, the insured filed separate suits on the policies to recover the loss.

The companies defended on the ground that the policies had become null and void, and the insured was barred of recovery thereon, because he violated the iron safe clause of the policies requiring that he keep, preserve,

and produce adequate books and records, presenting a complete record of business transacted, including all purchases, sales, and shipments, both for cash and credit, from date of inventory, and because both before and after the loss he was guilty of wilful concealment, misrepresentation, fraud, and false swearing concerning the insurance and the subject thereof.

The insured, by way of answer to the affirmative defenses presented by the companies, denied that he had been guilty of any wilful concealment, misrepresentation, fraud and false swearing relating to the insurance and the subject thereof, and denied that he should be barred of any recovery because of any breach of the iron safe clause, and asserted a waiver of the iron safe clause by the companies.

Upon the trial of the case, the court denied the appellants' request for a peremptory instruction and submitted to the jury the issue as to whether there had been a waiver of the iron safe clause, and as to whether the insured had performed all of the obligations devolving upon him under the contract of insurance. The jury resolved these issues in favor of the insured, and, in our opinion, were amply warranted by the evidence in so doing.

The appellant complains on this appeal that the trial court erred in denying its request for a peremptory instruction, contending that its affirmative defenses were established by the evidence and constituted sufficient grounds for the forfeiture of the policy.

We have carefully examined the evidence in this record and we find it insufficient to establish a ground of forfeiture of the policy because of any wilful concealment, misrepresentation, fraud, or false swearing by the insured in relation to the insurance and the subject thereof.

The evidence with respect to the appellee's compliance with the iron safe clause of the policy is not in substantial dispute. He fully disclosed to the general agent

of the company the kind of books and records which he kept and his method of keeping them. He told her that he kept his daily sales, his inventories, his invoices, and his charge accounts on a sales pad, explaining that when a customer paid in full his charge account, the tickets representing the same were torn out of the pad and surrendered to him. The agent approved this method of keeping his books and records and thereupon accepted the premium and issued the policy. ██ █ It is well settled under the decisions of this Court that a general agent may waive any of the provisions of the policy. Liverpool and London and Globe Insurance Co. v. Delaney, 190 Miss. 404, 200 So. 440; Buffalo Insurance Co. of New York v. Borden, 211 Miss. 47, 50 So. 2d 895; Camden Fire Insurance Company v. Koch, 216 Miss. 576, 63 So. 2d 103. ██ █ We have further held that slight circumstances of an intention to waive the forfeiture of an insurance policy are sufficient to support the finding of a waiver and that the law will seize on them as evidence of such intention. Sovereign Camp W. O. W. v. Williamson, 174 Miss. 404, 164 So. 47, U. S. F. & G Company v. Yost, 183 Miss. 65, 183 So. 260. ██ █ We have also held that courts do not favor forfeiture of policies for purely technical violations. Georgia Life Insurance Company v. Friedman, 105 Miss. 789, 63 So. 214. ██ We are of the opinion that when the general agent of the appellant was advised by appellee of his method of keeping the books and records and approved the same, and thereupon accepted the premium and issued the policies, the appellant waived the iron safe clause to the extent that the appellee was required only to conform to the method thus approved, and that the appellant is estopped by its conduct to deny the sufficiency of such method of keeping his books and records. Mitchell v. Aetna Insurance Company, 111 Miss. 253, 71 So. 382. ██ █ We are further of the opinion that a substantial compliance by the insured with such method of keeping his books and records was all that was required. ██

It is held generally with reference to the iron safe clause that a substantial compliance therewith is all that is necessary. Stewart v. American Home Fire Insurance Company, 211 Miss. 523, 52 So. 2d 30. That the appellee conformed to the method of keeping his books and records as revealed to and approved by the agent is abundantly established by the evidence. After the fire he made available to the appellant's adjuster and auditor his inventories, books and records and the auditor ascertained from them that the stock of merchandise amounted to $7,700.92. The same records were examined by the appellee's auditor and he ascertained from them that the merchandise amounted to $7,717.77, and testified that for appellee's type of business, his records were as good as he had had any occasion to work with for a similar business and that he was able to ascertain with reasonable accuracy the amount of merchandise on hand at the time of the fire. The only hiatus in the appellee's books and records was as to the amount of credit sales, and this was due to his method of keeping such sales on a sales pad and tearing out and surrendering to the customer all of his tickets upon the payment of an account in full. This method the agent of the appellant approved, and waived the iron safe clause to this extent. It, therefore, devolved upon the appellee to supply this hiatus and establish his loss, and this he did by oral testimony as to the value of his stock at the time of the fire. This testimony showed the value of the merchandise to be in excess of the coverage. Such testimony was, in our opinion, competent under the facts of this case. It is true that in construing the iron safe clause the courts have generally held that the books themselves must furnish with reasonable certainty the information required by the policy, both as to amount and value, unaided by oral testimony except to explain the method of keeping the books. Stewart v. American Home Fire Insurance Company, supra. This is because of the rule that parol evidence is inadmissible

to vary the terms of a written contract. However, in the absence of an iron safe clause or other clause in the policy contract restricting the source of information for the establishment of the loss, or if there be a waiver of such clause, the insured may prove his loss by witnesses who are qualified to testify as to the value of his stock of merchandise. Likewise, in view of the waiver in this case, it became proper for the insured, in order to supply the hiatus in his records as to the amount of his credit sales, to prove by the oral testimony of qualified witnesses the value of his stock at the time of the fire. We are accordingly of the opinion that the appellee should not be barred of recovery upon the ground that he breached the iron safe clause of the policy.

The appellant further complains that it was error to admit oral testimony as to the value of the stock of merchandise at the time of the fire. We have heretofore set forth one reason for the competency of such testimony in this case. It was competent also to combat the charge of wilful concealment, misrepresentation, fraud and false swearing in connection with his loss and the amount thereof. Appleman, Insurance Law and Practice, Sec. 12411, pages 251-252. We find no error, therefore, in the action of the court in admitting this oral testimony.

Viewing the record as a whole, we are of the opinion that the record discloses no reversible error. All issues of fact were submitted to the jury and the jury determined these issues adversely to the appellant. We think the verdict of the jury is amply warranted by the evidence. The general judgment entered in the court below in the suits as consolidated is accordingly affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Kyle* and *Gillespie, JJ.,* concur.