BROOM, Justice,
for the Court:
Insurance policy proceeds for a fire loss were sought by plaintiff, Barney J. Whitfield (appellee, insured) in his suit against U. S. F. & G. (appellant) in the Circuit Court of Forrest County. Trial without a jury resulted in a joint $74,546.50 judgment for the insured, Whitfield, and intervenor, First Mississippi National Bank, loss payee under the mortgage clause of the policy. We reverse.
Whitfield operated a wholesale sporting goods business which he established in 1973, with a loan from First Mississippi National Bank. Fire destroyed his warehouse on March 3, 1975, at which time U. S. F. & G. had insured the merchandise to the extent of $83,000. Shortly after the fire, John Moore, Adjuster for General Adjustment Bureau (GAB), arrived at the scene where he made photographs and told the insured, Whitfield, to bring his books, invoices and records to the GAB office. Whitfield complied the next day. Thereafter GAB kept his books and accounts for about three months, and calculated a loss estimate. Other facts will be stated as pertinent legal propositions are discussed.
U. S. F. & G. argues that the insured failed to establish the amount of his loss with reasonable certainty, and asserts that the claim should be denied because no complete and detailed inventory of the property destroyed was furnished U. S. F. & G. Admittedly, the policy provided that within *309 sixty days after loss the insured was required to furnish an inventory of the property damaged and destroyed, detailing costs and values thereof.
Whitfield kept all of his invoices of purchases and sales in a somewhat informal file folder system described by Cummings, Whitfield’s C. P. A., as follows:
He had sales invoices which he kept in folders by months and he had purchase invoices which he kept filed in folders by suppliers.
These records were introduced into evidence.
At the time of the fire, apparently some or all of these invoices were in the hands of Mr. Cummings, who was in the process of preparing Whitfield’s 1974 income tax return. Cummings, at Whitfield’s request, prepared the document entitled “Estimated Fire Loss” by employing the following process:
Well, I took the total sales and the total purchases. In other words, we had a total of everything he purchased from all his suppliers since the inception of his business. And we took the total sales, and assuming that he had a thirty percent gross margin on those sales, we deducted thirty percent from his sales and said seventy percent of his sales was the cost of what he sold. And, so, we took his total purchases, and from that we subtracted the cost of what he sold from the inception of the business. We subtracted the inventory that was on the books, which was not involved in the fire, and we also subtracted the proceeds from the salvage to arrive at the amount of loss.
The insured had been in business approximately twenty months before the fire, and the process by which C. P. A. Cummings arrived at the estimated fire loss was described by him as “the accepted accounting procedure whenever there is a fire loss . .” Cummings’ estimate dated March 11, 1975, was delivered to Adjuster Campbell and Mr. John Moore at the GAB office. The estimate concluded that $99,081 in merchandise constituted the fire loss. Along with the estimate given to GAB’s office were Whitfield’s invoices and records, and an inventory of merchandise sold for salvage was later delivered. GAB office kept these records for three months while considering the claim.
There is merit to the argument of U. S. F. & G. that the insured failed to establish the amount of his loss with reasonable certainty. Testimony of the insured’s witness (C. P. A. Cummings) as to the amount of the loss because of the fire was based upon the inventory reflected in the 1973 federal income tax return of the insured. According to the evidence, Cummings neither prepared the return nor discussed it with the actual preparer; and, he had no personal knowledge as to how the inventory figure was computed. Because of this, as to Cummings, the inventory amount utilized was rank hearsay. Also, no other witness testified as to the accuracy of the inventory figure reflected in the tax return. Because the testimony of the C. P. A. regarding the amount of loss was in a large measure based upon this inadmissible hearsay figure, the objection of U. S. F. & G. should have been sustained. Failure to do so constitutes error requiring reversal.
Additionally, there were other weaknesses in the proof of the insured’s loss. The record shows that there were missing and unexplained over one hundred invoices of merchandise purchased by the insured. Other testimony showed that as to sales which the insured made on credit, he kept no carbon copies of receipts and had no record of such items.
Continental Insurance Co. v. Thrash, 223 Miss. 344, 78 So.2d 344 (1955), is an instance where we allowed a claimant in an insurance case to “supply the hiatus in his records” by oral testimony of qualified witnesses. Here the amount of the insured’s loss which went to the jury through the testimony of C. P. A. Cummings was not the testimony of a “qualified witness.” The C. P. A. had made no audit of the insured’s records, but computed an estimate of loss based upon what, to a large extent, was speculation and hearsay.
*310 We reject the argument of U. S. F. & G. that the claim based upon the policy issued to Whitfield must be denied because Whitfield failed to submit a formal proof of loss in writing as specified by the policy. We reach this conclusion because the record clearly demonstrates that, immediately after the loss, Whitfield delivered his records to U. S. F. & G.’s representatives who kept the records for about three months without requesting a detailed inventory. Surely these facts, together with the settlement offer made to Whitfield at the end of three months, were sufficient to lead him to believe that he had done all that was necessary at the time. Further, as testified by witness Grove (for U. S. F. & G.) at the trial, “we’ve never objected to paying this claim at all. We want to pay it.” He said payment was not made for lack of proof to justify the amount demanded. Mississippi Code Annotated § 83-13-13 (1972) states that a proof of loss is waived where the insurer fails to furnish to the insured “proper blanks upon which to make the required proof of such loss, with full directions as to what proof is required to secure the payment of the policy.” In the case at hand, U. S. F. & G. made no proof of compliance with this statute. Here, where no forms were shown to have been given for the insured’s use in making a proof of loss, considered together with the fact that the insured furnished the insurer all of his records, plus the facts pertaining to the negotiations that went on and the offer of settlement, we think the requirement was waived. New Orleans Ins. Ass’n v. Matthews, 65 Miss. 301, 4 So. 62 (1888); 45 C.J.S. Insurance § 1044 (1946).
Accordingly, reversal is required and this case must be remanded for retrial.
REVERSED AND REMANDED.
PATTERSON, C. J., and INZER and SMITH, P. JJ., and ROBERTSON, SUGG, WALKER, LEE and BOWLING, JJ., concur.